THE DELAWARE, LACKAWANNA AND WESTERN RAIL-ROAD COMPANY, PLAINTIFF IN ERROR, v. SALMON, DEFENDANT IN ERROR.

1. Where, after demurrer overruled, leave is given to plead, and the demurring party pleads to the pleading demurred to, he waives the demurrer, and, on error after final judgment, the demurrer will not appear on the record.

2. A railroad company is bound to keep its track free from combustible matter, whereby fire may be communicated from its locomotives to adjoining property. Negligence in suffering combustible matter to accumulate on its right of way, so as to make it dangerous to adjoining property to run its locomotives through it, will make the company liable for injuries from fires originating in such combustible matter from coals dropped or thrown from its locomotives, and carried thereby to adjoining property, though there be no allegation that the engine from which the coals were dropped or thrown, was improperly constructed or driven.

3. The owner of lands adjacent to a railroad, is not obliged to keep his lands contiguous to the track, free from leaves or other combustible matter coming or being thereon.   He may cultivate, build upon, and use his lands, or leave them in a state of nature, as he may see proper, and will take upon himself no other risks than such as are incident to the operation of the road with proper care, by the company, and will, nevertheless, be entitled to damages for injuries by

fires arising from the negligence of the company in the construction. or management of its locomotives, or in the condition in which its track is suffered to remain.

4. Nor will such owner be barred of recovery of damages for injury by fires caused by the negligence of the company, by the fact that the company acquired the right of way through his land by grant or condemnation. A conveyance of land for railroad purposes, or an assessment of the value of lands taken, and damages under proceedings to condemn, only bars the recovery of such damages as naturally and necessarily arise from the use of the premises for the authorized purpose, and will not bar the recovery of damages for injuries arising from an unskilful or improper construction, or negligence in operating the road. For such damages, the remedy by action remains notwithstanding the conveyance or condemnation.

5. By a provision in the charter of a railroad company, its road was declared to be a public highway for the use of steam engines, and cars propelled by steam engines, only. *Held*, That the company was liable for injuries from fire thrown by the locomotive of another company, which the defendants suffered and permitted to be run on the road without any spark-arrester on it, its defective condition being known to the defendants' train despatcher, who exercised no supervision over it.

6. Where one, by negligence or misconduct, occasions a fire on his own premises, or the premises of a third person, which spreads from thence to the plaintiff's property, and causes an injury, the injury is, not, as a legal proposition, too far removed from his negligent act to involve him in legal liability. *Ryan* v. *N. Y. Central R. R. Co.*, 35 *N. Y.* 210, and *Penna. R. R. Co.* v. *Kerr*, 62 *Penn.* 353, disapproved.

7. In actions for injuries resulting from fire originating through the defendant's negligence, and communicated to the plaintiff's property, where distance, intervening objects, or the manner in which the fire was communicated, present the question whether the plaintiff's loss is attributable to the defendant's negligent act, and there be no intervening agency apparent which may stand, in law, as the immediate cause of the injury, the question is one for the jury whether, under all the conditions under which the loss happened, the destruction of the plaintiff's property was a result that might reasonably have been expected—though not, in fact, anticipated—from the defendant's negligent act.

In error to the Supreme Court.

This action was brought by Salmon, the defendant in error, against the railroad company, to recover damages for the destruction of his property by fire.

At the trial at the circuit, a verdict was had against the defendants below, on which judgment was entered, whereupon this writ of error was sued out.

For the plaintiffs in error, *Vanatta*, Attorney-General, and J. G. *Shipman*.

For the defendant, *H. C. Pitney*.

The opinion of the court was delivered by

DEPUE, J. The declaration contains eight counts. To the first six counts, the defendants pleaded the general issue. To the seventh and eighth counts, the defendants demurred. On argument, the demurrer was overruled, and leave was given to the defendants to withdraw the demurrer, and plead to the counts demurred to. The defendants availed themselves of that privilege, and pleaded the general isssue to those two counts. An order overruling a demurrer, with leave to plead, is a mere interlocutory order, on which a writ of error cannot be brought. *Warren R. R. Co.* v. *Town of Belvidere*, 6 *Vroom* 584–588. Where, after demurrer overruled, the demurring party pleads to the pleading demurred to, he waives the demurrer, and, on error after final judgment, the demurrer will not appear on the record. *Peck* v. *Cowing*, 1 *Denio* 222; *Jones* v. *Thompson*, 6 *Hill* 621; *United States* v. *Boyd*, 5 *How.* (*U. S.*) 29; *Clearwater* v. *Meredith*, 1 *Wall.* 25; *Bell* v. *R. R. Co.*, 4 *Wall.* 598. The defendants, under the leave given, having withdrawn the demurrer, and pleaded to the counts, no final judgment was entered on the issue of law made by the demurrer. Consequently, on this writ of error, the sufficiency of the counts demurred to is no further raised than it would be on a motion in arrest of judgment, and defects therein, which, by the statute of amendments, are aided by verdict, will be cured by the verdict on the issue of fact made by the subsequent plea. By the one hundred and eighty-sixth section of the practice act, (*Rev., p.* 635,) where some of the counts in the

declaration are bad, and others good, a verdict for entire damages is good. The remedy of the defendant, in such case, is to apply to the judge at the trial, to instruct the jury to disregard such of the counts as are faulty or bad. The defendants having substantially made such request of the judge at the trial, which was denied, and exception to such denial having been taken, in that way, the questions decided by the Supreme Court on demurrer to the two counts of the declaration, have been put upon the record.

To the third, fourth, fifth, and sixth counts, the defendants, in addition to the general issue, pleaded a special plea, to which the plaintiff demurred. On the argument of that demurrer, the Supreme Court held the demurrer to be well taken, and judgment final was entered against the defendants on the defence made in the said plea. Error is assignable on that judgment, and the decision of the Supreme Court on the legal sufficiency of the plea demurred to, is properly put in issue on this writ of error.

The opinion of the Supreme Court, on the demurrers, will be found in 9 *Vroom* 5.

Inasmuch as all the legal propositions which were discussed in the Supreme Court, on the argument of the demurrers, were again substantially presented at the circuit, and have been put on the record by the bills of exceptions, it will be most convenient to consider them as they appear in the bill of exceptions, in connection with the other propositions of law contained in the exceptions taken at the trial. For convenience, it is proposed to examine them in the order in which they were discussed by counsel on the argument.

The declaration contains two classes of counts. In the first class, the plaintiff counts upon the defective construction and negligent management of the defendants' locomotives. In the second class, there are no averments of imperfections in the construction of, or negligence in the use of the locomotives of the defendants. In lieu thereof, the plaintiff counts on an alleged duty of the defendants to preserve and keep the strip of land on which their track was laid, in such a condition

that fire should not be occasioned by coals and other igneous matter falling thereon from their locomotives, and also to take all necessary precautions to prevent fire that might be occasioned on said strips from extending to the plaintiff's lands. The breach assigned is, that the defendants so negligently and improperly kept their said strips of land, that the grass, herbage, sprouts, leaves, briers, wood, railroad ties, and other combustible matter thereon took fire, and that by reason of the defendants not having taken due and reasonable precaution to prevent fires so occasioned from extending from their lands, fire was communicated therefrom to the plaintiff's lands. To the latter class of counts, a demurrer was unsuccessfully filed in the Supreme Court.

The contention of the defendants is that, while a railroad corporation, empowered by its charter to use locomotives in moving its trains, owes a duty to the owners of lands adjacent to its route, to use all reasonable precautions to prevent the communication of fire from its locomotives, it owes no duty with respect to the condition of its track, that raises an obligation to keep it free from leaves and vegetation that may come upon it by the operation of natural laws. In other words, it is insisted that the company does not become a wrong-doer by leaving its lands in a state of nature, and that, although its track and the strips of land in its ownership, alongside of it, may be overgrown with grass and other vegetation, and covered with leaves in a highly combustible condition, the duty of the company is performed if its locomotives are constructed in an approved manner, and are managed with skill; and that injury to adjoining lands, resulting from a fire originating in such combustible matter, and carried thereby to adjacent property, is *damnum absque injuria*, if the company's locomotives are properly constructed and managed.

It will not be necessary to resort to the common law to ascertain what duties rest upon a railroad company authorized to use locomotives, with respect to the communication of fire. The statute of 1865 defines with precision the responsibility

of corporations or individuals, for injuries resulting from fires caused by locomotive engines, and the conditions under which such responsibility arises. It declares it to be " the duty of every company or person operating or using any railroad in this state with a locomotive engine or engines, to take and use all practicable means to prevent the communication of fire from any locomotive engine used or employed by them on any railroad in this state, in passing along or being upon any such railroad, to any property, of whatever description, of any owner or occupant of any land adjacent or near to such railroad," and provides that when any injury is done to any building, grain, hay, crops, or other property of any person or corporation, by fire communicated by a locomotive engine of any person or railroad corporation, in violation of the statute, said person or corporation shall be responsible, in damages, to the person or corporation so injured. *Rev., p.* 697, §§ 13, 14.

The duty of persons using locomotive engines is prescribed by this statute in comprehensive terms. They are required to use all practicable means to prevent the communication of fires from their locomotives. The duty is not limited to care in the construction and use of their engines; it extends to every means within their control by which fire from their locomotives may be communicated to the property of others. Fire kindled by coals dropped or thrown on the road-bed, or alongside of it, from a locomotive properly constructed, may spread and be communicated to adjacent lands, by the inflammable condition in which the company's lands are permitted to be. The removal of such combustible substances is quite as much a means of preventing the communication of fire from their locomotives, as using the usual methods of preventing the escape of fire from the locomotives themselves. That it was the legislative intent to reach every means by which fire might be communicated, directly or indirectly, from their locomotives, and to impose a duty in that respect, is apparent from the words of the statute. This construction is made more obvious by the fact that the legislature, by a

subsequent act, passed in 1873, (*Rev., p.* 698, § 15,) provided specifically for this duty of railroad companies, in providing screens on the smoke-stacks of their engines, to prevent, as far as practicable, the escape of fire, and left the general provisions of the act of 1865 unaltered.

The courts of England have adjudged that a duty lies upon a railroad company, under the common law, to exercise care in keeping its track free from combustible matter, whereby fire from its locomotives may be carried to adjacent lands, and that an action will lie for negligence in that respect, although there be no suggestion that the engine from which the fire was thrown was improperly constructed or driven. *Smith* v. *London and Southwestern R. Co., L. R.,* 5 *C. P.* 98 ; *S. C. in Exch. Ch., L. R.,* 6. *C. P.* 14. This view has also the support of the opinion of Chief Justice Cockburn, in *Vaughn* v. *Taff Vale R. W. Co.,* 5 *H. & N.* 679.

So uniformly has the liability of railroad companies, for the condition of their tracks, been adjudged, both on common law principles and under statutes similar to our statute, that Dixon, C. J., in Kellogg *v.* Chicago and Northwestern R. R. Co., declared " that all the authorities agree that the presence of dry grass and other inflammable material upon the way of a railroad, suffered to remain there by the company, without cause, is a fact from which a jury may find negligence against the company." 26 *Wis.* 223 ; *Bass* v. *Chicago, Burlington and Quincy R. R. Co.,* 28 *Ill.* 9 ; *Illinois Central R. R. Co.* v. *Mills,* 42 *Ill.* 407 ; *Illinois Central R. R. Co.* v. *Frazier,* 47 *Ill.* 505 ; *Webb* v. *Rome, Watertown and Ogdensburg R. R. Co.,* 49 *N. Y.* 420 ; *Flynn* v. *San Francisco and San José R. R. Co.,* 40 *Cal.* 14.

Whether regard be had to the statute or to the common law, a duty rests upon a railroad company to care for the condition of its track. Neglect to perform this duty is actionable negligence, and will impose a liability for the injurious consequences that may follow, and a company will not be discharged from responsibility for such consequences, by the fact that negligence in this respect was not combined with further

negligence in the construction or management of its locomotives. The decision of the Supreme Court on this subject, and the charge of the judge, " that if the defendants allowed combustible matter to remain on their right of way, so as to make it dangerous to adjoining property to run their locomotives by or through such combustible matter, it is negligence for which the company is culpable," were correct.

It was further contended that the damages recovered were, in part, too remote to be legally recoverable.

The plaintiff's injury was in the destruction of the sprouts and young timber standing and growing on two tracts of land, and of wood cut and lying in heaps thereon. The track of the railroad was laid across one of these tracts of land. The other tract was on one side of the railroad, and adjoined the company's lands. The three lots into which the plaintiff's lands were separated were each irregular in shape, and, in places, the lands of third persons intervened between the plaintiff's premises and the railroad.

The judge was asked to charge that the plaintiff could not recover for injuries caused by fires which were started on the lands of third persons, and spread from thence to his premises. The judge refused to give this instruction, and charged that if the fire was occasioned by the defendants' negligence, the plaintiff could recover, whether the lands injured adjoined the company's lands, or whether there was an intermediate owner between the company's lands and the lands injured. On this charge and refusal to charge, error is assigned.

To maintain this assignment of error, *Ryan* v. *New York Central R. R. Co.*, 35 *N. Y.* 210, and *Pennsylvania R. R. Co.* v. *Kerr*, 62 *Penn. St.* 353, were cited. The latter of these cases was decided on the authority of the former case. If these cases are regarded as holding that where one, by negligence or misconduct, occasions a fire on his own premises, or the premises of a third person, which spreads from thence to the plaintiff's property, and causes an injury, the injury, as a legal proposition, is too far removed from his negligent act to involve him in legal liability, they cannot be sustained on

·principle or authority. Wherever they have been cited as sustaining such a position, they have either not been followed, or their soundness has been doubted or denied. *Webb* v. *Rome, Watertown and Ogdensburg R. R. Co.*, 3 *Lans.* 453; *S. C. on appeal*, 49 *N. Y.* 420; *Pollet* v. *Long*, 56 *N. Y.* 200–206; *Perley* v. *Eastern R. R. Co.*, 98 *Mass.* 414–419; *Kellogg* v. *Chicago and Northwestern R. R. Co.*, 26 *Wis.* 223; *Atchison R. R. Co.* v. *Stanford*, 8 *Am. R. W. Rep.* 230–244; *Fent* v. *Toledo, Peoria and Wabash R. R. Co.*, 59 *Ill.* 349–359; *Grand Trunk R. R. Co.* v. *Richardson*, 91 *U. S. Rep.* 454–471. If they are considered as holding that diversity in ownership of the places where the fire began, and where the injury sued for occurred, or intervening space, without regard to causal connection—negligence in the origin of the fire being established—determines the limits of responsibility, they stand alone, and are contrary to the uniform course of decisions elsewhere. *Hart* v. *Western R. R. Co.*, 13 *Metc.* 99; *Hooksett* v. *Concord R. R. Co.*, 38 *N. H.* 242; *Smith* v. *London and Southwestern R. Co.*, L. R., 5 *C. P.* 98; *Milwaukee and St. Paul R. R. Co.* v. *Kellogg*, *Sup. Ct. U. S.,* (*Oct. T.*, 1876.) In Grand Trunk R. R. Co. *v.* Richardson, and Perley *v.* Eastern R. R. Co., the two cases of Ryan and Kerr were held to be inapplicable to statutes similar to the statute of this state. In the latter case, (Perley *v.* Eastern R. R. Co.,) it appears, by the opinion of Chapman, C. J., that the fire which destroyed the plaintiff's property proceeded from the defendants' locomotive, and came in a direct line, and without break, to the plaintiff's property, but in reaching the plaintiff's land, it went across the land of three or four different parties, which lay between the plaintiff's land and the railroad track; and that the distance to the plaintiff's land was about half a mile; and that the fire was fed, on its way, by grass, stubble, and woodland. The defendants contended that they were not liable for the injury, because it was remotely, and not proximately connected with the escape of the fire from their engine. "But," the Chief Justice said, "it was none the less 'communicated'

from the engine, because the intermediate land belonged to other persons, nor because the distance was half a mile. If the land had all belonged to the plaintiff, and had extended a mile, it would be difficult to establish a line on his land, and to hold that the statute gives him no remedy beyond that line. Nor does the fact that there were several owners make the damage to the plaintiff remote, in the sense in which that term is used, as contra-distinguished from direct and immediate."

The general rule is, that damages, to be recoverable, must be the natural, and also the proximate consequence of the wrongful act. Keeping in view that proximate, as here used, means closeness of causal connection, and not nearness in time or distance, and that its office is to qualify the generality of the idea expressed by natural, this definition, as a general rule, is the best that can be adopted. Many results of an act are perfectly natural, and yet, as consequences, are so remote from the act done, as not to involve legal responsibility. For instance, the natural tendency of fire, when kindled, is to spread, and to destroy all combustible matter in its progress. The destruction of a building, however far distant from the place where the fire was kindled, is a natural consequence of the fire, and yet its destruction may be so disconnected from the wrongful or negligent act of building the fire, that the wrong-doer is not legally responsible for the loss.

The difficulty is to determine, in such cases, when the causal connection is so broken that the legal liability of the wrong-doer ceases.

In *Cuff* v. *Newark and New York R. R. Co.*, 6 *Vroom* 18 ; *S. C. in error*, *Id.* 574, the intervention of the independent act of a third person between the wrong complained of and the injury suffered, which was the immediate cause of the injury, was adopted as a test of that remoteness of damage which forbids its recovery. Substantially, the same rule was held by Mr. Justice Miller, in *Ins. Co.* v. *Tweed*, 7 *Wall.* 44, and by Mr. Justice Strong, in *Milwaukee and St. Paul R. R. Co.* v.

*Kellogg, Sup. Ct. U. S.,* (*Oct. T.*, 1876.) This principle is approved by Dr. Wharton, in his interesting and instructive Treatise on Negligence, and is shown to have had its origin in the civil law. *Whart. on Neg.*, § 135. This learned author, in discussing the subject of the communication of fires, and of causal connection, where the fire has originated from negligence and been communicated from building to building until it reached the plaintiff's building, and one of the intermediate buildings has been negligently built of materials easily ignited, observes "that the only rule to which we can resort is, that causal connection ceases where there is interposed, between the negligence and the damage, an object which, if due care had been taken, would have prevented the damage." *Whart. on Neg.*, § 150. In a pamphlet by the same writer, on "The liability of railway companies for remote fires," he solves the problem of their liability in such cases by re-stating the same principle in the following language: "That a person whose negligence may have been one of the antecedents or conditions of an event, is relieved juridically from liability, if such negligence is applied to the particular event by the intervening negligence or malice of a third party." Of course, the same immunity will follow where the intervening negligent act is that of the plaintiff, so that it becomes contributory negligence, without which the loss would not have happened.

The cases in which the responsibility is laid on the original wrong-doer, though intervening agencies without his fault have interposed, are quite numerous. Indeed, cases of this class are only instances of the application of the principle adjudicated in the well-known Squib case, as expressed in the opinion of Chief Justice De Grey. *Scott* v. *Shephard,* 2 *W. Bl.* 892. The following are a few of the cases, mainly taken from recent decisions, which are illustrations of its practical applications: *Sneesby* v. *London and York R. Co., L. R.,* 9 *Q. B.* 263; *Romney Marsh* v. *Trinity House, L. R.,* 5 *Exch.* 204; *S. C., L. R.,* 7 *Exch.* 247; *George* v. *Skivington, L. R.,* 5 *Exch.* 1; *Collins* v. *Middle Level Comm'rs, L. R.,* 4 *C. P.* 279; *The George and Richard, L. R.,* 3 *A. & E.* 466; *Byrne* v.

*Wilson*, 15 *Irish L. Rep.* 332 ; *Pollett* v. *Long*, 56 *N. Y.* 200 ; *Powell* v. *Deveney*, 3 *Cush.* 300 ; *Vanderburgh* v. *Truax*, 4 *Denio* 464 ; *Thomas* v. *Winchester*, 6 *N. Y.* 397 ; *Carter* v. *Towne*, 103 *Mass.* 507.

As an apt illustration of the conditions under which the claim of causation will or will not be broken by an intervening agency, Mr. Bigelow selects the two cases of Thomas *v.* Winchester and Carter *v.* Towne. In the first of these cases, the agent of the defendant (a druggist) negligently put up belladonna, a poisonous drug, and labeled it as extract of dandelion, a harmless medicine, and sold it to another druggist, who sold it to the plaintiff, to whom it was administered as dandelion, and who was greatly injured. In the second case, the defendant sold gunpowder to a boy eight years old, who took it home and put it in a cupboard, with the knowledge of his parents, where it lay more than a week. His mother afterwards gave him some of the powder, which he fired off, with her knowledge, and he was injured by the explosion. In the first case, the defendant was held to be liable ; in the second case, he was held not to be liable. The reason of this difference in result was, that in the first case, the druggist, who was the intermediate vendor, was guilty of no negligence in selling to the plaintiff; and, in the second case, the mother was negligent in permitting her son to use the gunpowder, and if she had not been negligent, the injury would not have happened. In the latter case, the chain of causation between the plaintiff's injury and the defendant's act, was broken by the negligence of the intermediate party, and in the first case it was not. *Bigelow's Lead. Cas. on Torts* 609.

Whenever an intervening agency which has transmitted the force of the defendant's wrongful act to the injury complained of, appears, the question whether causal connection exists, so that the original wrong-doer shall be liable, is sometimes a' question of law and sometimes a question of fact, according to the circumstances of the particular case. In actions for injuries resulting from fire originating through the defend-

ant's negligence, and communicated to the plaintiff's property, where distance, intervening objects, or the manner in which the fire was communicated, present the question whether the plaintiff's loss is attributable to the defendant's negligent act, and there be no intervening agency apparent which may stand in law as the immediate cause of the injury, the question is one for the jury, whether, under all the conditions under which the loss happened, the destruction of the plaintiff's property was a result that might reasonably have been expected (though not in fact anticipated,) from the defendant's negligent act. *Whart. on Neg.*, § 154; *Webb* v. *Rome, Watertown and Ogdensburg R. R. Co.*, 49 *N. Y.* 420; *Fent* v. *Toledo and Northwestern R. R. Co.*, 59 *Ill.* 349; *Kellogg* v. *Chicago and Northwestern R. R. Co.*, 26 *Wis.* 223; *Milwaukee and St. Paul R. R. Co.* v. *Kellogg, Sup. Ct. U. S.*, (*Oct. T.*, 1876.)

The defendants contend that the chain of causation in the present case was broken by the negligence of the plaintiff himself, in permitting trees, saplings and bushes to stand on his premises adjoining the railroad track, which trees, saplings and bushes annually shed a great quantity of leaves, which were carried and driven by the winds upon the track of the railroad, forming a continuous line of dry combustible matter extending from the track of the railroad to the lands of the plaintiff, and to a connection and communication with large quantities of dry leaves carelessly and negligently left thereon, and that the said fires thereby accidentally and unavoidably caught and were carried to the plaintiff's lands, &c.

This question was presented as a substantive defence to the action, by the plea adjudged to be bad on demurrer in the Supreme Court, and was also raised at the trial in support of the contention that the damages were too remote. Whether it be regarded as a fact in denial of negligence on the part of the defendants, in the accumulation of combustible matter on their track, or as contributory negligence on the part of the plaintiff, thus breaking the chain of causation between the defendant's negligence and the injury sustained, is immaterial. In both aspects, it is founded on the allegation of a duty on

the part of the adjoining land-owner to cultivate, use or care
for his property in the interest of an adjoining proprietor.
That a servitude of this character is not imposed upon the
owner of lands contiguous to a railroad, is clearly shown by
the opinion of the Supreme Court in sustaining the demurrer
to the plea. The owner of lands so situate may cultivate,
build upon and use his lands, or leave them in a state of
nature, as he may see proper, and will take upon himself no
other risks than such as are incident to the operation of the
road in the exercise of proper care and vigilance by the com-
pany, and will nevertheless be entitled to remedy for injuries
by fires arising from the negligence of the company in the
construction or management of its locomotives, or in the con-
dition in which its track is suffered to remain. *Cook* v. *Cham-
plain Transportation Co.*, 1 *Denio* 91; *Kellogg* v. *Chicago
and Northwestern R. R. Co.*, 26 *Wis.* 222; *Flynn* v. *San
Francisco and San José R. R. Co.*, 40 *Cal.* 14; *Phila. and
Reading R. R. Co.* v. *Hendrickson*, 80 *Penn. St.* 182.

Nor will the fact that the company acquired the right of
way for its railroad of the adjacent owner, by grant or con-
demnation, create a servitude of this nature. A conveyance
of lands to a railroad company for railroad purposes, or their
condemnation for that purpose only, bars the recovery of such
damages as naturally and necessarily arise from the use of the
premises for the authorized purpose. It will not exclude the
recovery of damages for injuries resulting from the unskilful
or improper construction of the road, or negligence in oper-
ating it. If the subsequent injury results from negligence,
or the want of skill in executing the work, or from doing
some wrongful or unauthorized act, or omitting what the law
requires to be done in operating the railroad, the remedy by
action remains, notwithstanding the conveyance or condem-
nation. *Delaware and Raritan Canal Co.* v. *Lee*, 2 *Zab.*
243; *Bagnell* v. *London and Northwestern R. R. Co.*, 7 *H. &
N.* 423; *Dodge* v. *County Comm'rs*, 3 *Metc.* 380; *Cooley on
Const. Lim.* 564–570; *Addison on Torts* 727–751.

In the trial of issues for estimating the damages for lands

taken for the construction and use of a railroad, the uniform practice is, to instruct the jury that they shall include in the damages compensation for all injuries that may arise from the use of the premises for the purpose of a railroad, properly constructed and carefully managed, but not for injuries arising from negligence in the construction or in operating the road; that for injuries arising from the use of the lands taken for a railroad, properly built and carefully conducted, the land-owner is without redress, but that his remedy for injuries caused by negligence will continue, notwithstanding the proceedings to condemn. On the trial of such an issue, it would be an impossibility on the part of the jury, to make a present appraisement of the damages that might occur in the future, through the negligence of the company in operating its railroad, including, as it would, not only injuries to the remaining lands from fire, but also other injuries to the property, and even to the persons of the occupants which might happen from negligence in running the road. The introduction into the issue of an element of compensation founded on such considerations, and allowing juries to guess what might happen in this way in the future, would tend greatly to unreasonable and excessive verdicts. The law, in estimating compensation for lands taken, wisely limits the issue to damages arising from the taking, and such damages as are necessarily incident to the use of the lands for the proposed purpose, leaving injuries resulting from negligence in such use to be compensated for by action whenever they occur.

The illustration of the allowance of the cost of building and maintaining fences along the track, and the immunity of the company from liability for injuries to cattle straying on its track, is inapplicable. At common law, the owner of cattle is bound to keep them on his own premises, and is liable for damages done by their straying upon the lands of others, though they escape without any fault on his part. The necessity of additional fencing to enable the land-owner to discharge the common law duty of keeping his cattle on his own premises, makes an allowance of such additional expense proper in

estimating damages in condemning his lands.   But no duty is imposed by the common law on the owner of lands to cultivate or use them in a particular manner for the special convenience of his neighbor.   He may cultivate or use his lands in the customary manner, or leave them in a state of nature, without becoming a wrong-doer.

If it be asked why a railroad company is under an obligation to keep its track free from combustible matter, and the owner of adjoining lands is under no such obligation, with respect to his lands, the answer is tersely given in the opinion of the Chief Justice, in deciding the demurrer in the Supreme Court: " The company uses a dangerous agent, and must provide proper safeguards ; the land-owner does nothing of the kind, and has a right to remain quiescent."

Another exception is founded on the charge and refusal to charge as requested, in relation to fire communicated by the engine Joseph Scranton.

By the tenth section of the charter of the Morris and Essex Railroad Company, (under which the defendants operate the road as lessees of the entire franchise), the then present railroads of said company, and the road or roads authorized by that act, were declared to be taken and deemed public highways for the use of steam engines and cars propelled by steam engines only.   *Acts*, 1851, *p*. 31.

The Scranton was owned by the Lackawanna Iron and Coal Company, and was used for carrying ore for the iron and coal company, on defendant's road, from Port Oram to Washington.   It was run without any spark-arrester upon it.   Its condition was known to the engine despatcher of the defendants, and he exercised no supervision over it.   The judge was asked to charge " that the Lackawanna Iron and Coal Company had a right to put their engine on the Morris and Essex railroad and run it, if they complied with the time-table of the defendants, and this company could not stop them, and is not responsible for their acts ; and if the engine of that company ran at times when this fire might have occurred, the plaintiff must look to that company alone."   The charge was,

that if the defendants suffered and permitted the engine, in that dangerous condition, to run upon their road, they were liable; they were not bound to do so, and if they consented to it, they were responsible for the injuries done.

The charge, in view of the proof that the engine was openly run on the defendants' road, and that her condition was known to the defendants' engine despatcher, who, in fact, exercised no supervision over it, substantially put the liability of the company on the basis of their permission to run the engine over the road, with knowledge of her dangerous and unlawful condition. In this aspect, the charge has the support of the English case of *Richardson* v. *Great Eastern Railway Co., L. R.,* 10 *C. P.* 486; *S. C., L. R.,* 1 *C. P. Div.* 342, with respect to the liability of a railroad company for injuries arising from the defective condition of a truck belonging to another company, and carried over the road of the former, under the ninety-second section of the railway clauses' consolidation act, (8 and 9 *Vic., ch.* 20,) which compels every company incorporated under that act, to receive on its railroads and transport the carriages of other connecting lines.

Under the circumstances of this case, the charge, in my judgment, was correct.

The defendants were not authorized to surrender to third persons the entire control of their franchises. The duty of exercising these franchises to accomplish the purpose for which they were granted, devolved on the defendants, and they could not, under the section referred to, transfer their franchises to another company, and absolve themselves from the obligations connected therewith.

The utmost that can be claimed for that section is, that it gave the right to other persons to run engines and cars upon the defendants' railroad, subject to such rules and regulations as they might prescribe.

At common law, an inn-keeper is bound to receive into his inn any guest who may apply, and it is the duty of a carrier to receive and carry all goods that may be offered for transportation. And yet, if an inn-keeper should receive into

his house, knowingly, persons afflicted with a contagious disease, and exercise no care to prevent the spread of the disease, he would be responsible for the consequences. And if a carrier should knowingly receive and carry a dangerous explosive, and omit proper precaution in its transportation, he would be liable to third persons for injuries resulting therefrom. Neither the inn-keeper, in the one case, nor the carrier, in the other, could discharge himself from such liability by falling back on his common law duties, or upon the right of the guest to entertainment, or of the shipper to have his goods transported. The owner of lands may lawfully lease them to a tenant, and yet, if he knowingly leases them for purposes of prostitution, or for the transaction of an unlawful business, he will be liable for the injury that may accrue to third persons, as much as if he set up the nuisance himself.

These principles of law are applicable to this case. The defendants' road was under their management and control. The track and road-bed were their property, and in their possession. The gist of the action is negligence in the manner in which it was used. If they knowingly suffered and permitted another company to make it a place of danger to adjacent land-owners, they are responsible in damages.

Another exception is to the charge of the court, that the measure of damages is the difference in the market value of the lands burned over, before and after the injury. This instruction, if objectionable, is too restrictive on the plaintiff's right. He was entitled also to compensation for the value of the wood lying on the plaintiff's land, which was destroyed by the fire. The defendants have no ground of exception in that respect.

There being no error apparent on the record, the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, WOODHULL, DODD, LILLY.   9.

*For reversal*—None.