WILLIAM R. MARSHALL, PLAINTIFF, v. SUBURBAN DAIRY COMPANY, DEFENDANT.

Submitted March 17, 1921—Decided July 19, 1921.

1. Where one by negligence puts another under a reasonable apprehension of personal physical injury, and in a reasonable effort to escape, the latter sustains physical injury, a right of action arises to recover for the damage thus occasioned.

2. Plaintiff, while driving an automobile along the highway, in attempting to avoid a collision with a runaway horse, attached to a milk wagon, was injured by the horse, which crashed into his car. It was proved at the trial that the horse, otherwise gentle, was possessed of several characteristics, among which were those of starting for home when cold or hungry, and of starting before he was told to start, the custom of the driver being to run along until he overtook the vehicle. It was also in evidence that the driver had left the horse untied, shortly after the dinner hour on a cold day, while he went into a house to make a collection. *Held*, that the negligence of the defendant in leaving the horse untied and unattended, in spite of the fact that he knew the peculiar idiosyncracies of the horse, was the proximate cause of the injury.

On rule to show cause.

Before Justices TRENCHARD, MINTURN and KALISCH.

For the rule, *Wescott & Weaver.*

*Contra, Lewis Starr.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff and his son, who was driving, and another were seated in an auto touring van, which contained a load of furniture weighing about eight thousand pounds. The truck was proceeding along the White Horse pike in the direction of Atlantic City, at about fifteen miles an hour, when the son, observing a runaway horse hitched to a milk wagon coming in zigzag fashion towards him, en-

deavored to avoid a collision. It was apparently a matter of serious difficulty to avoid the runaway, owing to his uncertain course, so that the truck driver first turned to the right, and, perceiving danger in that course, turned to the left, and while the truck was thus proceeding diagonally across the road, in the effort to avoid the oncoming danger, the runaway horse plunged over the radiator and into the truck, injuring the truck and fracturing some of the plaintiff's ribs, as well as inflicting other injuries personal to plaintiff, to recover for which damage the suit was instituted.

It was in evidence that the horse had been left unhitched near a house on the public road into which the driver had gone to collect money on his route as a milkman.

The trial resulted in a verdict for the defendant, and the plaintiff obtained this rule. The facts recited constitute the plaintiff's case; and while there was no effort made to seriously controvert the facts, the defendant endeavored to meet the situation and exculpate itself, by showing the character of the horse for gentleness and general docility; and also alleged as a defence that the plaintiff being the owner of the truck and having maintained general control over its direction during this occurrence, was culpable in so directing its movements, as to practically invite the collision that happened, and thus became the proximate cause of the accident. It was shown that while the horse possessed all the evidences of gentility attributed to him, he possessed also some dangerous propensities well known to his driver, which at times would make the animal dangerous to others having equal rights upon the highway; and dominant among these, when homeward bound he possessed a characteristic, not peculiar to horses, of starting for home, without an invitation or direction, when the dinner hour arrived, or whenever he felt that he was cold and hungry; and, as this accident happened in January, while he was homeward bound and after the dinner hour, it is reasonable to assume that the horse was both cold and hungry.

Another dominant characteristic of the animal, of which the driver was conscious, was that he possessed the human

financial instinct of starting "when he heard the money jing-
ling." And still another peculiarity of the animal was that
in running he, as the driver expressed it, "never would bear
to the left; he always bore to the right; you always had to
keep a strong hand on the reins to keep him out of the curb."
To this was added a willing disposition of starting before he
was told to start; and the driver would then run behind him,
until he had overtaken him; but, on this occasion, said the
driver, "he was homeward bound; he was hungry," and, mani-
festly, therefore, the race was an uneven one and the driver
was left behind. To add to the animal's idiosyncracies, the
driver testified, "he was sprung so that he couldn't run away;"
and yet, *mirabile dictu*, Pegasus like he ran away, and as one
of the occupants of the truck testified, "the horse struck us,
came over the radiator and jumped in the side of the truck."

Recovery in a case of this character may be predicated upon
one or both of two legal theories—first, that of *scienter*, and
secondly, the happening of an accident which calls for a rea-
sonable and satisfactory explanation by the defendant, upon
the legal principle inherent in the maxim *res ipsa loquitur*.
*Liberman* v. *Drill*, 94 *N. J. L.* 387; *MacKenzie* v. *Oakley*,
108 *Atl. Rep.* 771; *Higgins* v. *Goerke-Krich Co.*, 91 *N. J. L.*
466.

The learned trial court, misconceiving the legal situation,
left it to the jury to say whether the plaintiff, in his effort to
escape the danger in the exigency created by the defendant's
negligence, did not, by some misconceived effort, contribute
to the accident. Thus he charged that "if the jury believe
the conduct of the plaintiff in turning the truck so as to stop
the progress of the horse was the proximate cause of the in-
jury, he would be guilty of contributory negligence." The
plaintiff had a legal right to drive and pursue his business
upon the highway, and if in an earnest and conscientious
effort to avoid the impending danger he was made the victim
of defendant's initial negligence, the proximate cause of the
damage is the act of the defendant who negligently let loose
the cause of the danger and thereby made the damage pos-

sible. "Proximate cause," in this connection "connotes not nearness of time or distance, but closeness of causal connection." *Delaware, Lackawanna and Western Railroad* v. *Salmon,* 39 *N. J. L.* 299.

The famous "Squib case" presents the earliest prominent application of the rule, where the original negligent actor was held liable after the dangerous instrumentality had been tossed about in self-defence until it reached the final victim, and the rule was there enunciated that the original actor in the cause "must be presumed to have contemplated all the consequences of his wrongful act." 2 *W. Blacks.* 892.

This reasonable rule has received universal recognition in this country, and has been repeatedly affirmed in this jurisdiction.

Thus it has been declared that "where one by negligence puts another under a reasonable apprehension of personal physical injury, and, in a reasonable effort to escape, the latter sustains physical injury, a right of action arises to recover" for the damage thus occasioned. *Tuttle* v. *Atlantic City Railroad,* 66 *N. J. L.* 327.

So, where to avoid being struck by a runaway horse the plaintiff "jumped aside and broke his leg," the defendant was liable upon the same principle. *Collins* v. *West Jersey Express Co.,* 72 *N. J. L.* 231; *Buchanan* v. *West Jersey Railroad Co.,* 52 *Id.* 265.

The same rule has been applied in the fire cases arising from the spark of a locomotive, which, through the intervention of other property, eventually ignited the plaintiff's noncontiguous property. *Delaware, Lackawanna and Western Railroad* v. *Salmon, supra.*

The rationale inherent in the rule in such a situation has been declared to be: "If the faulty act of the plaintiff simply presents the condition under which the injury was received, and was not in a legal sense a contributory cause thereof, then the sole question will be whether, under the circumstances in which the injury was received, it was due to defendant's negligence." *Menger* v. *Lauer,* 55 *N. J. L.* 205.

Were the rule otherwise, every well-meant but unsuccessful effort to escape from an impending danger would be included in the category of contributory negligence; and successful riding upon a public road, and safe travel generally, would be reduced to a problematical inquiry as to the mental and physical gymnastic ability of the traveler. The law imposes no such Ajax like or herculean responsibility upon the traveling public; but in the absence of proof of more than a well-meant and honestly-directed effort to avoid impending danger, holds the original actor liable for the natural consequences of his tort-feasance.

The driver in this case knew the peculiar characteristics of the horse, and charged with that knowledge it became his legal duty to exercise due foresight and reasonable care for harm to one lawfully upon the highway, by tieing the horse or wagon, or otherwise securing him, so as to prevent the danger which reasonable foresight, care and prudence would have warned him was reasonably probable under the circumstances; for, as was declared by the Court of Errors and Appeals in *Griffin* v. *Payne,* 95 *N. J. L.* 490, "liability is established when it is shown that the peril being of the defendant's creation was known to the defendant but not to the person injured." *Beck* v. *Director General, Id.* 158; *Higgins* v. *Goerke-Krich Co.,* 91 *Id.* 464.

The uncontradicted testimony supported this legal status, and the verdict, therefore, was clearly against the weight of the evidence.

The act of 1915 (*Pamph. L., p.* 295) has no application to this situation, since it refers only to cities and towns, and we have therefore not considered it in reaching our conclusion, which is that the rule to show cause should be made absolute.