49 N.J. Super. 591 (1958)
141 A.2d 117
HARRY GLASER AND RUTH GLASER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
HACKENSACK WATER COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, AND RUSSELL E. STYLES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1958.
Decided April 28, 1958.
*592 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Aaron W. Nussman argued the cause for plaintiffs-appellants (Mr. Walter P. Back, attorney).
Mr. Sidney Dincin argued the cause for defendants-respondents (Messrs. Breslin & Breslin, attorneys).
*593 The opinion of the court was delivered by PRICE, S.J.A.D.
Plaintiffs Harry Glaser and Ruth Glaser, his wife, seek reversal of a judgment based on the trial court's action in granting defendants' motion for involuntary dismissal at the end of plaintiffs' case. Plaintiff Ruth Glaser sought damages for personal injuries alleged to have flowed from a trespass. Her husband plaintiff Harry Glaser sought recovery of consequential damages.
The proofs were as follows: Plaintiffs were owners of property in New Milford, Bergen County, N.J., on March 12, 1956. On that date defendant Styles employed by defendant Hackensack Water Company as a meter reader went to plaintiffs' property to read the meter for the corporate defendant. The meter was located in the garage on the ground level of the house a few feet from the garage overhead door through which entrance was gained by defendant Styles. The garage door was unlocked. Styles opened the door, entered the garage, read the meter, closed the door and left. At the time in question Mrs. Glaser was in a bedroom on the second floor. Her 3 1/2-year-old daughter was in the living room on the lower floor. Mrs. Glaser heard the movement of the garage door. She cried out: "Who is there?" She received no answer, became panicky and, fearing for the safety of her daughter, ran rapidly down the stairs from the second floor to the first floor. The testimony indicates that, as she neared the foot of the staircase, she missed a step, jumped down the last two steps and fell. She landed on the living room floor with her full weight on her right foot, fracturing her ankle.
She testified that meter readers employed by the corporate defendant had been coming to the house for several years to check the meter. On prior occasions she had asked them to give her notice of such prospective visits and had said: "Please let me know when you are coming, don't walk in my house."
The record discloses that during the colloquy between the trial court and plaintiffs' attorney at the time of the argument of the motion for dismissal, the latter conceded *594 that the corporate defendant had a contractual right to have its meter read periodically by its employee. The contention of plaintiffs' attorney was that a trespass had been committed because defendant Styles on the occasion in question entered the premises without permission and failed to make his presence known. Defendants denied that any trespass occurred. They contended that Styles' entry into the garage was lawful. The trial court based its dismissal of the case on the following grounds: (a) that a contractual right to read the meter existed and that the unannounced entry by Styles did not constitute a trespass; (b) that assuming the unannounced entry constituted a trespass Mrs. Glaser's injuries were not proximately caused by it; and (c) if the action were considered as one based on negligence of defendant Styles in entering the premises of plaintiffs without warning, the accident was not the natural and proximate result of the negligence and was the direct result of the intervening act of Mrs. Glaser in running rapidly down the stairs in the manner outlined.
We hold that the dismissal of this case was proper but that the justification for such action is found in the fact that the injuries sustained by Mrs. Glaser were not the proximate result of the acts of defendant Styles whether the suit be considered as grounded in trespass or negligence.
On this appeal plaintiffs assert that the unannounced entry by defendant Styles constituted a trespass; that the proofs establish a prima facie case; that a jury question was created as to whether the injuries sustained were the proximate result of the trespass. Plaintiffs rely on the case of Mitchell v. Friedman, 11 N.J. Super. 344 (App. Div. 1951), to sustain their contention that the trial court erred in granting defendants' motion for dismissal. In that case plaintiff, a tenant of defendants, instituted suit to recover damages for injuries sustained by her as the result of the admitted negligence of defendants in failing to repair the plumbing system which had been damaged by fire to the extent that the water pressure became insufficient to flush *595 automatically the toilet in plaintiff's apartment. Plaintiff was compelled to draw water in pails and carry it to the toilet in order to flush it, as the only method by which to maintain sanitary conditions in the apartment. This was still the situation 12 days after the fire, when she suffered a back injury while lifting a pail of water from the bath tub. At the conclusion of plaintiff's case defendants moved to dismiss the complaint on the ground that their alleged negligence was not the natural and proximate cause of the injury, and also on the ground of contributory negligence and assumption of risk. The court's denial of the motion was presented as the reason for reversing the judgment. In sustaining the action of the trial court this court held that a jury question was presented and the action of the trial court was proper. Reliance is placed on the fact that in the Mitchell case, supra, this court (11 N.J. Super. at page 347) stated the controlling factors to be as follows:
"Appellants argue that the answer to the question of natural and proximate cause depends upon whether or not the defendants should have foreseen that, as a result of an insufficient water pressure, the plaintiff would be injured in the manner charged. Many decisions more or less supporting this view of the law might be cited, beginning perhaps with the expression of a doubt in Greenland v. Chaplin, 5 Ex. 243; 155 Eng. Rep. 104 (1850). But there has been a strong trend through the years to discard foreseeability as a test of proximate cause and to use it instead in defining negligence. Annotation in 155 A.L.R. 157; Pease v. Sinclair Refining Co., 2 Cir., 104 F.2d 183, 123 A.L.R. 933 (1939). And see the dissent as well as the majority opinion on the basis of liability in Palsgraf v. Long Island R.R. Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (N.Y. 1928). `If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen, the extent of the harm or the manner in which it occurred, does not prevent him from being liable.' Restatement, Torts, § 435; see also § 901 et seq., and especially 905. In England, the foreseeability of injury does not appear as an element in the consideration of proximate cause in negligence cases. The Argentino (1888), 13 Pro. Div. 191; affirmed (1889), 14 A.C. 519; Cobb v. Great Western Ry., [1893] 1 Q.B. 459; affirmed [1894] A.C. 419.
Our New Jersey cases disclose a development similar to that observable in other states. In Crater v. Binninger, 33 N.J.L. 513 (E. & A. 1869), an action for deceit, Chief Justice Beasley, *596 after mentioning the difficulty of determining what results are proximate and what remote in a legal sense, said that `those results are proximate which the wrongdoer, from his position, must have contemplated as the probable consequence of his fraud or breach of contract.' This concept, somewhat modified, was applied a few years later to a negligence case, Delaware, L. & W.R. Co. v. Salmon, 39 N.J.L. 299 (E. & A. 1877). But in Hammill v. Penn. R.R., 56 N.J.L. 370 (Sup. Ct. 1894), where may be found one of our best discussions of proximate cause, it is said that the person guilty of negligence `is equally liable for the consequence whether he could have foreseen them or not.' An attempt to reconcile the conflict appears in Newark & S.O.R. Co. v. McCann, 58 N.J.L. 642 (E. & A. 1896). After stating that the term `natural' imports that the injury is such as might reasonably have been foreseen, the court continues, `Of course, it is not necessary that the wrongdoer should be able to anticipate the very occurrences which resulted from his laches; it is enough if, after they have happened, they are seen to have followed from his misconduct in the natural course of things and within the range of reasonable probability; and it must generally be left to the jury to determine according to the circumstances whether the facts fit the standard of naturalness.' Our more recent cases hold it to be sufficient `If it might have been foreseen or anticipated that some injury might result' from the failure to exercise due care. DeMott v. Knowlton, 100 N.J.L. 296 (E. & A. 1924); Millman v. U.S. Mortgage, etc., Co., 121 N.J.L. 28, 36 (Sup. Ct. 1938); Bacak v. Hogya, 4 N.J. 417 (1950)."
In the case of Lutz v. Westwood Transportation Co., 31 N.J. Super. 285, 289 (App. Div. 1954), certification denied, 16 N.J. 205 (1954) this court held as follows:
"The effect of this charge was to instruct the jury that liability on the part of the respondents would not exist unless they, as persons of ordinary prudence, could have foreseen that the particular injury and damage Mrs. Lutz suffered might naturally and probably result from their negligence. Such a statement unduly restricts the scope of a wrongdoer's responsibility. The obligation to respond in damages for negligent acts is not limited to those injuries and damages or consequences which might reasonably have been anticipated. In recent years New Jersey has adopted the rule which eliminates the need for demonstrating that the particular consequences of a negligent act must be foreseen. At present the tortfeasor is generally answerable for an injury that results from his wrongful act in the ordinary course of events. So long as his negligent act is a substantial factor in bringing about the injury complained of, liability may be found. Mitchell v. Friedman, 11 N.J. Super. 344, 348 (App. Div. 1951); Mulquinn v. Lock Joint Pipe Co., 13 N.J. Super. 467 (App. Div. 1951)."
*597 The court then referred to the Mitchell case, supra, and added (31 N.J. Super. at page 290):
"Therefore, unless so highly extraordinary that they cannot be considered natural, consequences which follow in unbroken sequence from the original negligent act, without an intervening efficient cause, are natural and proximate, and for such consequences the original wrongdoer is responsible even though he could not have foreseen, the particular results which did follow. Bacak v. Hogya, 4 N.J. 417 (1950); Cf. Prosser on Torts, p. 343 et seq. (1941); Restatement-Torts, § 433 (1934)."
In the case of Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 108 (1950) it was held that where there is a factual dispute as to the events and circumstances which caused the injuries, proximate cause is a jury question. Cf. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 175 (1955).
Mr. Justice Jacobs speaking for the Supreme Court in Martin v. Bengue, Inc., 25 N.J. 359, 374 (1957), held that proximate and intervening causes are ordinarily jury questions whether the substantial factor concept be applied or the test of foreseeability or the major tests advanced elsewhere, citing 2 Harper & James, Torts, 1132, 1151.
In the case of Sarris v. A.A. Pruzick & Co., 37 N.J. Super. 340 (App. Div. 1955), where the trial judge had granted defendant's motion for an involuntary dismissal of plaintiff's cause of action, one of the reasons assigned was that there was no proof that the negligence of defendant proximately caused plaintiff's injury and damage. Judge Jayne's opinion contained the following statement (37 N.J. Super. at page 350):
"The second reason for the dismissal of the action was the persuasion of the trial judge that the failure of the defendant to provide the needed illumination was not the efficient cause, the cause which originated the other causes, and that which naturally and probably led to, and which might have been expected to occasion, such a mishap. Vide, Hellstern v. Smelowitz, 17 N.J. Super. 366, 372 (App. Div. 1952).
Too much has already been written on the principle of the relativity of causation in tort cases to condone any further juridical treatment of the subject in the present case.
*598 Suffice to express our conviction that in the factual circumstances of this case the problem of proximate cause was one conventionally to be submitted to the jury for solution. * * *"
In the Hellstern case, supra, Judge Jayne in discussing the meaning of the term proximate had occasion to stress that "the intervening cause which operates to bar a plaintiff's recovery in a negligence action must be a culpable and efficient cause and one which destroys the efficient causal connection between the negligent act or omission of the defendant and the injury or loss."
In the Bacak case, supra, Judge Ackerson said (4 N.J. at page 424):
"* * * It is not necessary that the tortfeasor anticipate the very occurrence which resulted from his wrong doing, it is sufficient that the resulting injury was the natural and probable consequence thereof and it was within the realm of foreseeability that some harm might occur to the plaintiff. * * * The question of proximate cause is ordinarily one for the jury. * * *"
See also Hartman v. City of Brigantine, 42 N.J. Super. 247, 261 (App. Div. 1956).
Within the framework of these decisions, therefore, the question is whether the facts in the case at bar are such that it should have been left to the jury to determine whether the facts "fit the standard of naturalness" referred to in the Mitchell case, supra. Unless the consequences are so highly extraordinary that as a matter of law they cannot be considered natural, the issue would have to be submitted to a jury.
Implicit in the cited cases is the principle that, although ordinarily the issue of proximate cause has to be submitted to a jury, there are cases in which the factual situations presented require the trial judge to hold as a matter of law that the injury is not proximately related to the alleged wrongful act. Powers v. Standard Oil Co., 98 N.J.L. 730 (Sup. Ct. 1923), affirmed 98 N.J.L. 893 (E. & A. 1923); Monaco v. Comfort Bus Line, Inc., 134 *599 N.J.L. 553, 559 (E. & A. 1946), referred to in Beyer v. White, 22 N.J. Super. 137, 142 (App. Div. 1952).
In our opinion the case at bar is such a case.
Plaintiff places great reliance on the case of Bouillon v. Laclede Gaslight Co., 148 Mo. App. 462, 129 S.W. 401 (Ct. App. 1910). In that case plaintiff appealed from a judgment for defendant on a directed verdict. The factual situation was that the plaintiff was pregnant, was ill and confined to her bed due to a threatened miscarriage. The entrance door to plaintiff's home was near to the room in which plaintiff was confined. Plaintiff was not a user of gas. A gas meter had been installed in the basement immediately under her flat in connection with the flat above plaintiff's and occupied by other tenants. An agent of defendant knocked loudly on the door of plaintiff's apartment. Plaintiff directed the nurse to open the door. She did so and defendant's agent identified himself and said he came to read the meter. The nurse protested that he could not enter the apartment because of the serious illness of plaintiff. The latter heard the agent's demand, instructed the nurse to shut the door, called to the agent that he had no right to molest her and that she didn't "use gas anyhow." The agent cursed and also replied: "By God, I don't know whether you do or not, and I am going to find out." Plaintiff called to the nurse to tell the agent to go around to the rear of the building, whereupon defendant's agent desisted his attempt to go through plaintiff's apartment and entered the basement by a side door. The controversy at the door had continued for about five minutes and plaintiff as a result of the attendant excitement was seized with successive nervous chills and suffered a miscarriage. She sought recovery of damages from defendant as the result of the excitement and fright occasioned by the conduct of defendant's agent in unlawfully attempting to enter her apartment. The court held that although the agent had a right to enter the basement beneath plaintiff's apartment for the purpose of reading the gas meter, it was clear that he had no authority to enter or pass through plaintiff's flat for that purpose. She was *600 not a consumer of gas and the gas meter was in no sense connected with her household. The court further held (129 S.W. at page 403) that:
"When the injury results from a trespass, as in this case, the trespasser will be required to respond for all consequences which are the natural and probable result of the act complained of in the circumstances of the particular case, and it is not essential that the wrongdoer may be able to anticipate who the particular sufferer may be."
The court made the further observation (129 S.W. at page 403):
"In cases of affirmative wrong damages are not remote as distinguishable from proximate when they are directly traceable to the wrongful act of the tort-feasor. In other words, the privacy of a home enjoys the sanctity of the law. A trespasser must anticipate that persons may be there sick or in a delicate state of health and liable to suffer injury from gross misconduct on his part."
The court further observed (129 S.W. at page 402):
"Plaintiff is assured peaceful repose of her home against unwarranted intrusion from others. A trespasser is liable to respond in damages for such injuries as may result naturally, necessarily, directly, and proximately in consequence of his wrong. This is true for the reason the original act involved in the trespass is unlawful. Wyant v. Crouse, 127 Mich. 158, 86 N.W. 527, 53 L.R.A. 626. As to what matters do so result depends upon the particular facts of each case. The consequence may be one thing in one case and something different in another, but, be this as it may, if an injury is directly traceable to the unlawful invasion of plaintiff's right as the proximate cause, a recovery may be had therefor. It may be that fright is a necessary and natural result of a trespass committed upon one's dwelling by force or violence, and that the fright so entailed occasions a physical injury. If such be the case, then the injury or damage entailed as a result of the fright occasioned in the first instance by the mode or manner of the trespass is regarded as consequential to the trespass."
It is apparent that the facts in the case at bar are so dissimilar from the cited case that no support for plaintiff's case can be found therein. The injury of plaintiff in the case at bar was not directly traceable to the agent's act in *601 opening the garage door and entering to read the meter. He had no contact or communication whatever with plaintiff. Her injury was caused by her own act in descending the stairway to her living room so rapidly that she fell and injured herself as recited. There is a marked difference between a physical injury resulting directly from the fright, and the mode and manner in which plaintiff's injury in the case at bar was occasioned.
To sustain their contention that a plaintiff can recover from a tortfeasor despite the absence of physical contact between the defendant and plaintiff, plaintiffs, in the case at bar, rely on the cases of Collins v. West Jersey Express Co., 72 N.J.L. 231 (E. & A. 1905), where plaintiff sustained a broken leg when he jumped to avoid being struck by a runaway horse which had been negligently left unhitched; Marshall v. Suburban Dairy Co., 96 N.J.L. 81 (Sup. Ct. 1921), where plaintiff in attempting to avoid a collision with a runaway horse, attached to a milk wagon and negligently left untied, was injured by the horse crashing into his car; and Tuttle v. Atlantic City R. Co., 66 N.J.L. 327 (E. & A. 1901), where a woman seeing a car which had been derailed emerging from a freight yard and coming toward her across a public street at great speed in fright ran for safety and fell, injuring herself.
Plaintiffs rely in part on the case of Watson v. Dilts, 116 Iowa 249, 89 N.W. 1068, 57 L.R.A. 559 (Sup. Ct. 1902), where a trespasser unlawfully and stealthily invaded plaintiff's home at night, proceeded to the second floor, and engaged in a physical encounter with plaintiff's husband which caused her to be so terrified that she was prostrated and suffered severe injury to her nervous system. The court held that the prostration resulting from fright so caused might be considered to be the proximate or probable result of defendant's act. The appellate court reversed the trial court which had sustained a demurrer.
Plaintiffs cite Lesch v. Great Northern Ry. Co., 97 Minn. 503, 106 N.W. 955, 7 L.R.A., N.S., 93 (Sup. Ct. 1906), where the court sustained the trial court in denying *602 defendant's motion for a direction of a verdict in a case where two of defendant's employees who were unknown to plaintiff without warrant or permission invaded plaintiff's home while she was alone on the premises, searched the house, opened trunks and threw their contents on the floor. Plaintiff became terrified by their acts and became ill as a result. They cite Yoakum v. Kroeger, 27 S.W. 953 (Tex. Civ. App. 1894), where a railroad company had moved certain freight cars along a spur or switch so rapidly and negligently as to cause them to run off the switch into the yard of plaintiff, tearing down a fence and stopping approximately ten feet from her house. This occurred on several occasions and plaintiff became so frightened and fearful that the cars would run into the house that she suffered nervous shock and serious illness ensued.
The aforesaid brief recital of the facts in each case demonstrates conclusively that the cited cases constitute no support for plaintiffs' recovery in the case at bar. Aside from the complete factual dissimilarity between the cases cited by plaintiffs and the case at bar, it is clear that plaintiff Ruth Glaser makes no claim that illness and nervous shock occasioned by fright form the basis of her claim. She is claiming damages resulting from the fall when she ran so rapidly down the stairs that she missed her footing.
We recognize that on a motion for an involuntary dismissal "the evidence will not be weighed but all the proofs which support the claim of the party against whom the motions are made must be accepted as true and he is entitled to the benefit of all legitimate inferences which may be drawn therefrom." Vadurro v. Yellow Cab Co. of Camden, supra (6 N.J. at page 106). We have observed this rule in considering the case at bar and determine that the involuntary dismissal of plaintiffs' case was justified and proper.
Affirmed.