· THE NEWARK AND SOUTH ORANGE RAILROAD COMPANY, PLAINTIFF IN ERROR, v. MARY McCANN, DEFENDANT IN ERROR.

The plaintiff, being the only passenger in a street car, became suddenly ill, told the conductor she felt sick and twice requested him to stop the car so that she might get off; he failed to do so, and going to the front of the car began talking to the motorman.    The plaintiff, growing worse and becoming frightened and dazed, rose to her feet and staggered toward the rear of the car and there fell unconscious through the door.    *Held*, that whether the plaintiff was guilty of negligence, whether the conductor was guilty of negligence, and whether the plaintiff's injuries were the natural and proximate consequence of the conductor's negligence, were all questions of fact for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Elias F. Morrow*.

For the defendant in error, *Robert H. McCarter*.

The opinion of the court was delivered by

DIXON, J.   The questions raised on this writ of error relate to the refusal of the learned justice at the trial to nonsuit the plaintiff or to direct a verdict for the defendant.

The circumstances shown on behalf of the plaintiff were these: The plaintiff, a girl eighteen years old, was the only passenger in the defendant's street car; while there she became sick, and going to the car door she told the conductor that she was sick and asked him to stop the car so that she might get off; he told her to sit down and she would feel better after awhile; she sat down but felt sicker all the time. Presently the conductor passed through the car and she again appealed to him to stop; but he looked at her, smiled, went on to the front of the car and began talking to the motorman. She then felt dizzy and sick at the stomach, became frightened and dazed, got up from her seat and staggered toward the rear door for the purpose, she said, of seeing whether she could not get some one on the street to stop the car, and fell unconscious through the door, remaining unconscious for several weeks.   The car had then six hundred and seventy feet to go before reaching the end of the electric route, at which point the plaintiff was to be transferred to a horse car of the defendant for carriage about a mile further to her destination.

On these circumstances the defendant takes three positions—that negligence on the part of the plaintiff is shown, that negligence on the part of the defendant is not shown, and that if it is, the plaintiff's injury is not the natural and proximate consequence of such negligence.

First, as to the plaintiff's negligence:

In view of her youth, her illness and her mental disorder, we cannot say, as matter of law, that she was bound to exercise the same degree of care and forethought as persons of mature years, in the full possession of their faculties, would ordinarily exercise, and it was for the jury to determine whether, under the peculiar conditions then existing, she used such prudence as it was reasonable to require.

Second, as to the negligence imputable to the defendant:

It was lawful for the jury to find that, when the plaintiff made her second appeal to the conductor, he was apprised of her serious illness, or at least should have inquired further as to her condition. They also had the right to conclude that, on perceiving or informing himself of the extent of her sickness, it became his duty either to stop the car so that she might alight as she requested, or else to afford her such reasonable attention as would save her from harm because of her detention in the moving vehicle. He did none of these things, but passed her by heedlessly and left her utterly uncared for, when there was no other person at hand to render her assistance. Such conduct would not fulfill the duty of the defendant as a carrier of passengers. It is but a corollary from the principle which enjoins upon these carriers reasonable care for the security of their passengers, that when, through sudden illness, a passenger becomes less able to look after his own safety and that fact is made known to the proper agent of the carrier, the latter must exercise toward the passenger a greater degree of care than is demanded in ordinary circumstances. *Sheridan* v. *Brooklyn City and N. Railroad Co.*, 36 *N. Y.* 39; *Pittsburg and C. Railroad Co.* v. *McClurg*, 56 *Pa. St.* 294; *Atchison, T. & S. F. Railroad Co.* v. *Weber*, 33 *Kans.* 543; *Croom* v. *Chicago, M. & St. P. Railroad Co.*, 52 *Minn.* 296.

The last point for consideration is the connection between the negligence of the conductor and the plaintiff's injuries.

In suits of this character the law requires that the damages chargeable to the defendant shall be the natural and proximate result of his delinquency. The term "natural" imports that they are such as might reasonably have been foreseen; the term "proximate" indicates that there must be no other culpable and efficient agency intervening between the loss and the defendant's fault. *Wiley* v. *West Jersey Railroad Co.*, 15 *Vroom* 247. Of course it is not necessary that the wrongdoer should be able to anticipate the very occurrences which resulted from his laches; it is enough if, after they have happened, they are

seen to have flowed from his misconduct in the natural course of things and within the range of reasonable probability ; and it must generally be left to the jury to determine according to the circumstances whether the facts fit the standard of natural-ness. *Hammill* v. *Pennsylvania Railroad Co.*, 27 *Id.* 370, 378.

In the present case the behavior of the plaintiff was not necessarily either an unnatural or an unlikely consequence of the conductor's disregard of her requests and her condition. Being seized with a sudden and increasing sickness, and impressed with the thought that she must leave the car for relief, the jury might deem it both natural and probable that, when the conductor refused to stop the car, she should seek other means of attaining her object and might in her confusion adopt measures ill-suited to her purpose. We cannot adjudge that such a conclusion was illegal.

The question whether the injuries were the proximate effect of the conductor's neglect also lay, we think, within the province of the jury. If they determined that the acts of the plaintiff, after the conductor failed to stop the car at her second request, were not blameworthy, then his negligence was, in a legal sense, the proximate cause of the ensuing accident. The fact that between the defendant's fault and the plaintiff's injury there are intermediate acts of other persons, even of the plaintiff, will not render the injury too remote for legal contemplation and redress, if the intervening acts are not wrongful, and either naturally follow upon the defendant's misconduct or merely furnish the conditions on which that misconduct operates. Recent instances of this nature are common in our own reports. *Finegan* v. *Moore*, 17 *Vroom* 602 ; *Houston* v. *Traphagen*, 18 *Id.* 23 ; *Driscoll* v. *Carlin*, 21 *Id.* 28 ; *City Railway Co.* v. *Lee*, *Id.* 435 ; *Buchanan* v. *West Jersey Railroad Co.*, 23 *Id.* 265 ; *Phillips* v. *Library Company*, 26 *Id.* 307 ; *New York, Susquehanna and Western Railroad Co.* v. *Marion*, 28 *Id.* 94.

We find no error in the record, and the judgment must be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, MAGIE, BARKALOW, BOGERT.    7.

*For reversal* — GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, NIXON.    5.