ANNIE STAINES, PLAINTIFF IN ERROR, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, DEFENDANT IN ERROR.

Argued March 9th, 1905—Decided June 19th, 1905.

1. A passenger, in the act of alighting from a railway car, was told by the conductor to jump, as the train was in motion. The train was not in motion, as the passenger could readily have ascertained. She became excited, jumped, and was injured. *Held*, that it was a question for the jury whether the passenger had contributed to her injury by her own negligence.
2. The fact that the injuries of the plaintiff would not have happened to a younger person, or one of less weight, does not absolve the defendant.

On error to the Union Circuit.

The plaintiff, a passenger of the defendant company, was injured by jumping from a train at Elizabethport. The train was at a standstill; the plaintiff was in the act of alighting, and had gone down two steps, when some one in uniform who was walking up and down with a lantern in his hand (the plaintiff says it was the conductor) told her to hurry, and said that the train was in motion, and to jump down. She says she got excited, thought the train was in motion, that she would be killed, and jumped to save herself. It was dark—after six o'clock in the afternoon of December 22d. She was a heavy woman, over fifty years of age, and was injured as the result of the jump. The court below ordered a nonsuit upon the ground that the plaintiff was guilty of contributory negligence in jumping from a train that was standing still, which she believed to be moving.

For the plaintiff in error, *Jeremiah A. Kiernan.*

For the defendant in error, *William A. Barkalow* and *Sherrerd Depue.*

The opinion of the court was delivered by

SWAYZE, J. Since passengers are themselves required to exercise judgment in alighting, it can hardly be questioned that the servants of the railroad company must refrain from conduct calculated to deprive them of their judgment and self-control. It would involve a manifest inconsistency to hold passengers liable for the exercise of care and to hold the carrier excusable for acts of its servants likely to prevent the exercise of that care. The defendant does not question the liability of the carrier for such acts of its servants, but argues that a false statement made by an employe is not an *act* of negligence. The argument overlooks the fact that the false statement as to the movement of the train was accompanied by the advice to jump, and, moreover, gives altogether too narrow a meaning to the word "act." We think the word includes in its signification any conduct of the defendant's servants, whether evinced by movement of the organs of speech or some other physical movement. The phrase "act of speaking" does not seem to involve any strained or unusual use of the word "act."

The case, taking it as we must on a judgment of nonsuit, most strongly for the plaintiff, presents, also, the question whether a reasonable time had been allowed the plaintiff to alight. There is no evidence to indicate unusual slowness in her movements or delay; she came out of the car behind her daughter, with other passengers, and was entitled to sufficient time to alight in the usual way, taking her age and weight into consideration, without being hurried by the conductor.

The question whether the negligence of the conductor was the proximate cause of the injury is one as to which doubt has been expressed. It is true that an act of the plaintiff intervenes between the negligence of the defendant's servant and the injury to the plaintiff, but the cases generally hold that the passenger may rightly rely upon the superior experience of the trainmen in determining whether the action which he is advised to take is dangerous, unless the danger is so glaring that no person of ordinary prudence would have followed the advice. 3 *Thomp. Negl.,* § 2850, citing the

cases. It is true, as the defendant argues, that these are cases where the trainmen may be supposed to have superior knowledge, and that the present is a case where the fact that the train was standing still was as obvious to the plaintiff as to the conductor; but the conductor might properly be supposed to have superior knowledge as to the probability of the train being on the point of moving, and the plaintiff, even if she observed that the statement that the train was moving was false, might well have thought that it was on the point of starting and have naturally become excited by the conductor's hurrying her. In her excitement she might not, and probably could not, have observed the circumstances as well as if she had been more self-possessed; her act in jumping, under the circumstances, was to a certain extent involuntary, and the partial paralysis of the plaintiff's will through fear was due to the conduct of the defendant's servant. In New York it has been held that a street railway company would be liable even to a trespasser stealing a ride when the conductor frightened him by sudden gesture and ejaculation so that he fell off (*Ansteth* v. *Buffalo Railway Co.*, 145 *N. Y.* 310), and in Massachusetts it has been intimated that the rule might apply where the plaintiff was frightened to the point of automatic action or loss of judgment and self-control. *Mugford* v. *Boston and Maine Railroad Co.*, 173 *Mass.* 10. This court has refused to sustain an action by a trespasser under such circumstances (*Powell* v. *Erie Railroad Co.*, 41 *Vroom* 290), but the case of a passenger stands on a different ground.

The difficulty expressed by the trial judge was with reference to contributory negligence. The fact that the plaintiff erroneously thought the train was in motion cannot, in our judgment, subject her to the same imputation of negligence as if the train had been really in motion. Whether her conduct was negligent and whether that negligence contributed to the injury, must depend upon the actual situation, and not upon her surmise.

It is argued that she could readily have ascertained that the statement of the conductor was false, and that she was

guilty of contributory negligence in not alighting more carefully.

Whether or not, under the circumstances, a person exercising reasonable care would have jumped, is a question of fact for a jury. It has been held in somewhat similar cases that it is not necessarily negligent for the passenger to jump even from a moving train. *Filer* v. *New York Central Railroad Co., 49 N. Y. 48; Lewis* v. *Delaware and Hudson Canal Co., 145 Id. 508.*

"No reasonable man," says a text-book of recognized authority, "would hesitate to risk a moderate leap rather than be carried miles away from home." *Shearm. & R. Negl. (5th ed.) 519.*

The case is still stronger in favor of a passenger jumping from a train standing still, as in this case. It may possibly have been negligent for a woman of the age and weight of the plaintiff to jump, but the case is not so clear that a jury might not lawfully find to the contrary. In this case, too, the plaintiff was very much excited by the alarm given by the conductor. We cannot say that the language of the conductor, under the circumstances of this case, was not likely to produce such an alarm in the plaintiff's mind as to deprive her for the moment of self-control, and thus bring the case within the rule established in this court by *Tuttle* v. *Atlantic City Railroad Co., 37 Vroom 327.* It is true that there was no actual peril of injury to life or limb if she had waited. The peril present to her mind was that of being carried beyond her station, and although she could have ascertained that the train was not actually moving at the moment she would naturally and almost unavoidably infer from the conductor's language that the train was on the point of moving, and that the danger of being carried beyond her station was imminent. We think it is a question for a jury whether the conductor's language was such as naturally to deprive her of the power of judgment and self-control. If it was, she is not, as a matter of law, chargeable with contributory negligence, even though the peril present to her mind was not a peril to life or limb, but only the danger of being carried beyond her

destination. The reason that persons who are encountered by peril are excused from the exercise of that care for their own safety which would otherwise be expected, is that the peril prevents a calm exercise of judgment. This may happen from perils other than those to life or limb.

A case similar to the present is *Foy* v. *London, Brighton and South Coast Railway Co.* (1865), 18 *C. B.* (*N. S.*) 225, in which a passenger jumped from the step of the carriage at a place below the end of the platform. She was in delicate health and the concussion injured her spine. She had been requested by the porter to alight at that place. The Court of Common Pleas held the company liable.

A few years later (1868), in *Siner* v. *Great Western Railway Co., L. R., 3 Exch.* 150; 37 *L. J., Exch.* 98, a majority of the Court of Exchequer took a somewhat different view, but distinguished the Foy case upon the ground that the plaintiff in that case had alighted at the porter's invitation. The decision was affirmed by a majority of the judges in the Exchequer Chamber. *L. R., 4 Exch.* 117; 38 *L. J., Exch.* 67.

In *Cockle* v. *Southeastern Railway Co.* (1872), *L. R., 7 C. P.* 321; 41 *L. J., C. P.* 140, the question came once more before the Exchequer Chamber on an appeal from the Common Pleas, which had been equally divided (39 *Id.* 226), and the defendant was held liable. A well-considered opinion by Lord Cockburn quotes at length the opinions in *Praeger* v. *Bristol and Exeter Railway Co., 24 L. T.* (*N. S.*) 105.

At the time the Cockle case was decided, *Bridges* v. *North London Railway Company* must have been pending in the House of Lords. Counsel for the defendant cited that case as decided by a bare majority of four judges in the Exchequer Chamber. 40 *L. J., Q. B.* 188. Subsequently the Bridges case was decided by the House of Lords after a year's consideration. After taking the opinions of the judges, which were unanimous and concurred in by Lord Chelmsford and Lord Hatherley, the judgment of the Exchequer Chamber in favor of the defendant was reversed upon the express ground that the case presented a jury question.

The result reached in the English courts after this thorough discussion commends itself to our judgment. We think the present case presented a question for the jury.

It is further urged by the defendant that the injuries of the plaintiff were due to her age and physical condition rather than to the effect of the jump itself. But the fact that the injuries would not have happened to a younger person, or one of less weight, does not absolve the defendant. *Newark and South Orange Railroad Co.* v. *McCann,* 29 *Vroom* 642.

The judgment of nonsuit must be reversed.

*For affirmance*—THE CHANCELLOR, VROOM, GREEN. 3.

*For reversal*—DIXON, GARRISON, FORT, GARRETSON, SWAYZE, BOGERT, VREDENBURGH. 7.