# PITTSBURGH & B. COAL CO. v. HUDAK.

(Circuit Court of Appeals, Third Circuit. November 26, 1910.)

No. 1,393.

1. MASTER AND SERVANT (§§ 285, 286, 289[*])—ACTION FOR INJURY TO SERVANT —QUESTIONS FOR JURY.

Plaintiff, a minor, was employed as a car driver in defendant's coal mine, and it was his duty, on taking loaded cars to the large room or flat, at the foot of the shaft, to couple the same to the other cars there standing on the track. The coupler on the last car so standing was left in such position that the arriving cars should couple by impact, but, if they did not, it was the driver's duty to see that the coupling was made. Plaintiff's cars on one trip having failed to couple by impact, he pushed them back, and went between the cars, and, finding the coupling on the standing car defective, was trying to adjust it so as to make a coupling, when another driver, without warning, ran his cars against those of the plaintiff, forcing them against the standing cars, and plaintiff's hand was caught between the bumpers and crushed. There was evidence that a large number of the cars were defective and that plaintiff had given notice of such fact to the foreman, who had promised to have them repaired; also, that the standing car with the defective coupling had been marked for the shop for repair. *Held*, that the questions of negligence and contributory negligence, and the question whether the defendant's

[*]For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

negligence in failing to furnish properly equipped cars, if found, was a proximate cause of the injury, were properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1016, 1010, 1132; Dec. Dig. §§ 285, 286, 289.*]

2. MASTER AND SERVANT (§ 285*) — ACTION FOR INJURY TO SERVANT — QUESTIONS FOR JURY—PROXIMATE CAUSE OF INJURY.

In an action against a master for an injury to a servant, the question of the proximate cause of the injury is generally one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002–1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Action at law by Michael Hudak, in his own right and as father and next friend of John Hudak, a minor, against the Pittsburgh & Baltimore Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Clarence Burleigh and William A. Challener, for plaintiff in error. L. K. & S. G. Porter and James B. Drew, for defendant in error.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

CROSS, District Judge. This action was commenced in the court below by Michael Hudak, as father and next friend of his minor son, to recover damages sustained by the son by reason of an injury which he received through the alleged negligence of the defendant below while in its employ, and also for the expenses incurred by the father in the case of his son, as well as for the loss of his son's services. John Hudak was a minor about 17 years of age, and first entered the employment of the defendant below as a trapper in a coal mine, and continued to serve in that capacity for about one year. During that period he became familiar with the signals used in the mine for the stopping and starting of mine cars by the drivers who handled them, and also with the mode of coupling such cars. About two months prior to the accident, he was promoted and became a driver in the mine, and at the time of the accident was receiving the wages allowed adult experienced drivers. The business of a driver was to distribute empty cars to the miners and collect the loaded cars from them. Each driver had his own mule, and after he had collected his "trip" or load, consisting of about three cars, would proceed out to the mine's main entry to a place called a "flat," or "layout," which was a roomy, double-tracked place where the loaded cars were assembled, and from which they were removed from the mine by an electric motor; the loaded cars occupied one track of the flat and the empty cars the other, and on the day of the accident, October 2, 1907, a number of loaded cars had already been placed on the flat or layout. Prior to the accident, John Hudak on several occasions had, according to his testimony, notified one Coleman, the boss of the drivers in the mine and the person who had employed him, that a considerable number of the cars had uneven and defective bumpers and defective coupling links, which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Coleman promised him he would have repaired, and it was in reliance upon this promise that he says he continued his work. It was the duty of a driver to couple his cars to the cars ahead and leave the coupling link of the rear car of his trip, so that the next driver, upon turning his mule to one side, could propel his cars against those standing ahead, and thereby effect a coupling by the impact of the cars. In order to do this, Hudak, on the day in question, came to the flat or layout with his trip of three loaded cars, and, following the above practice, caused his car to bump against the cars standing ahead, but the cars failed to couple. It was Hudak's duty to see that the cars were coupled, and, as they failed to couple by impact, he pushed his cars back about four feet, and entered between them and the cars ahead which he had found standing there, to make an examination, which disclosed that the coupling link on the rear standing car was twisted and the bumpers of an uneven height. While working with the link and trying to adjust the same, so as to bring the cars together, and effect their coupling, the driver of another trip of loaded cars behind him, without giving any notice or warning to Hudak, and without his knowledge, propelled his cars against Hudak's, and their impact forced Hudak's cars against those standing ahead, and Hudak's hand was caught between the bumper of his forward car and the bumper of the rear car of the standing trip.

The foregoing statement of facts was substantially taken from the brief of the counsel for the defendant in error. It differs, however, but little from that of the counsel of the plaintiff in error and wherein it does we think it is supported by the evidence. The case was submitted to the jury, and verdicts found for the plaintiff below. A motion was thereupon made by the plaintiff in error for judgment non obstante veredicto, which motion was, however, overruled and judgment entered on the verdicts, to review which this writ of error was taken.

According to the plaintiff's evidence, the coupling link and bumper of the car to which he attempted to couple his cars were defective. It also appears in evidence that there were 30 or 40 cars in use which bent or twisted links and bumpers, and that knowledge of their condition had been brought by young Hudak to the attention of Coleman, the boss of the drivers, who said: "All right, I will get them fixed. Go along and get to your work." There was also evidence that the car to which Hudak attempted to couple his cars was marked with chalk "shop," which, according to the evidence, meant that the car was damaged. The jury was therefore amply justified in finding that the coupling link in question was defective, and that the defendant company was guilty of negligence in failing to take ordinary care to provide young Hudak with reasonably safe appliances wherewith to work. As we have already seen, the cars failed to couple in the ordinary way, that consequently Hudak attempted to adjust the link and bumper so that a coupling might be effected, and that it was while thus engaged that his hand was injured. The evidence, furthermore, shows that it was not only Hudak's duty to make the coupling by the momentum and impact of the cars, but, if that method failed, to make it in the very manner in which he was attempting to

make it, when his hand was caught and injured. Upon this point the foreman testified as follows:

"Q. Then, when the boy brought these cars together and found they wouldn't couple, it was his duty to get in there and change that link and see if he couldn't couple them, wasn't it? A. He would have to push his wagon back, certainly.

"Q. Well, it was his duty to do it? A. Yes, sir.

"Q. And he was acting under your instructions when he did it? A. It was his duty to couple his cars.

"Q. And, if when he got them together the first time they didn't couple, it was his duty to shove them back, and change the coupling pin, and try it again, wasn't it? A. Yes, sir."

Under the circumstances, Hudak was not as a matter of law guilty of contributory negligence. That question was undoubtedly for the jury, and it was properly left to them, and they determined it adversely to the defendant below.

The principal point urged at the argument, however, was that, assuming that there was sufficient evidence of negligence on the part of the defendant below to go to the jury, still its negligence was not the proximate cause of the injury sustained by young Hudak. We think that there was a direct causal connection between the negligence of the defendant in failing to supply Hudak with reasonably safe appliances with which to do his work and the injury which resulted to him from a concurrent cause. The question of proximate cause is generally for the jury. Counsel for the defendant below requested the court to charge upon this point as follows:

"If the jury find from the evidence that the injury to the minor plaintiff, John Hudak, was caused by the act of another driver, by causing or permitting a load of cars to strike the cars which were in charge of Hudak, and these, in turn, were driven forward against the standing load of cars attached to the motor, thereby catching and crushing the hand of John Hudak between the bumpers, the verdict of the jury must be for the defendant."

This request was, as admitted at the argument, equivalent to asking for a binding instruction. The court, however, charged the request, but with the following addition:

"That if you believe that the injury was sustained by the minor plaintiff in the manner indicated in the instruction, coupled with the fact of the defective appliances of the defendant, then and in that case the plaintiff is not charged with the negligence of his co-employé; in other words, if the master fails to furnish a suitable appliance with which to work, and injury arises to an employé by reason of the negligence of another employé, and that of the master, concurring, then the doctrine of fellow-servant had no application."

The addition was perhaps irrelevant, but, however that may be, it did not essentially modify the request, and certainly did not warrant the allegation of the assignment of error that "the court erred in declining to give said instruction without any qualification whatsoever," because, as already stated, the effect of such compliance, since the facts were practically undisputed, would have been to withdraw the question entirely from the consideration of the jury. It seems entirely clear under the evidence that the bumping of the cars was not the proximate cause of the plaintiff's injury, and, were it necessary, it would perhaps not be going too far to say that substantially the

only question in the case for the jury to decide, outside of the question of contributory negligence, was whether there was satisfactory evidence of the negligence of the defendant in failing to supply a proper coupling link. It is evident that, if the couplings of the defendant's car had been in order, the accident would not have occurred. Since, however, they were not in order, the plaintiff, as a necessary sequence of such defect, was bound in the performance of his duty to go between the cars and make the coupling. His exposure to added danger was therefore a necessary consequence of defendant's negligence. Now while in that necessarily assumed and exposed position, and as an incident to it, he was injured, not by a new and independent cause, but by one which, in the course of the defendant's business, naturally and designedly followed in operation. The oncoming of the cars was not under the circumstances an independent, intervening agency that could properly be deemed the proximate cause of the accident. The defective link was the efficient and predominating cause, and, if the bumping of the cars brought up from the rear was a cause of the accident at all, it was a cause subordinate, dependent and incidental to the efficient or predominating cause.

In Newark R. R. Co. v. McCann, 58 N. J. Law, 642, 645, 34 Atl. 1052, 1054 (33 L. R. A. 127), the Court of Errors and Appeals speaking by Judge Dixon, said:

"The fact that between the defendant's fault and the plaintiff's injury there are intermediate acts of other persons, even of the plaintiff, will not render the injury too remote for legal contemplation and redress, if the intervening acts are not wrongful, and either naturally follow upon the defendant's misconduct or merely furnish the conditions on which that misconduct operates [citing several cases]."

In Donegan v. Baltimore & N. Y. Ry. Co., 165 Fed. 869, 91 C. C. A. 555, there were presented to the Circuit Court of Appeals of the Second Circuit the following facts for consideration: The plaintiff, a brakeman on a freight train of the defendant, was directed to cut off two rear cars from a slowly moving train before it reached a certain designated switch. The automatic coupler of one of the cars was broken, and plaintiff went between the cars to uncouple them by hand, but failed to do so, and in endeavoring to step out from between the cars caught his foot in an unblocked frog of a switch leading to a turntable, was unable to extricate it, and was pulled down under the wheels and injured. The question in the case was whether the defendant's violation of the safety appliance act was the proximate cause of the accident. The Circuit Court ruled as a matter of law that it was not. The appellate court held this to be error and reversed the judgment below, and in the course of its opinion said:

"It is true that the direct instrumentality by which the plaintiff was injured was the frog. It was the immediate, but not necessarily the proximate, cause. It was for the jury to determine whether the failure of the defendant to equip the cars with the appliances required by the statute was, in view of all the facts and circumstances, a proximate cause of the accident. Had the car been properly equipped, there would have been no occasion for the plaintiff to go into a place of danger. We cannot say that the jury would not have been warranted in finding that the accident would never have occurred had the car been equipped with the statutory appliances, and consequently that the failure to have such appliances was a proximate cause of the plaintiff's injuries."

The question of proximate cause was considered by the Supreme Court of the United States in Choctaw, Oklahoma & Gulf R. R. Co. .v. Holloway, 191 U. S. 334, 24 Sup. Ct. 102, 48 L. Ed. 207, a case brought to that court from the Circuit Court of Appeals for the Eighth Circuit; its. opinion being reported in 114 Fed. 458, 52 C. C. A. 260. The opinion of the Supreme Court which affirmed the judgment below is, so far as it relates to the question of proximate cause, summarized in a syllabus as follows:

"Where the company has negligently failed to equip an engine with brakes and it is derailed by striking an obstacle which was on the track without negligence of the company, and there is evidence that the engine could have been stopped more quickly with than without brakes, it is for the jury to say whether there would have been an accident had the brakes been on and fit to use; and, if the obstacle caused the necessity for brakes, the neglect of the company to furnish them constitutes the immediate and proximate cause of the accident rather than the existence of the obstacle."

It is, however, unnecessary, and, moreover, impossible, to consider the well-nigh infinite number of cases dealing with this subject, which, notwithstanding they have established certain definite and reasonably clear rules, have not met, and necessarily cannot meet, the difficulty which inevitably arises the moment it is attempted to apply them to an individual case. We have no difficulty, however, in determining, under the evidence in this case, and for the reasons above given, that the bumping of the cars which came from the mine after Hudak's was not the proximate cause of the injury which he received, but rather the defendant's negligence in the respect already mentioned. Other errors have been assigned and have been carefully considered, but we find them all without merit.

The judgment below is therefore affirmed with costs.