## S. IRWIN MIDDLETON ET AL. v. HENRY S. ROBBINS ET AL.

1. A private individual cannot have a writ of *certiorari* in matters affecting the public, unless he has some personal or property interest to be specially, immediately and certainly affected by the act of which he complains.
2. The order for an election to determine a minimum license fee, under section 4 of the act of March 20th, 1889 (*Pamph. L., p.* 77), called the high license law, is not reviewable by *certiorari* on application of the owner or licensee of a hotel within the township.

On *certiorari*.

Argued at February Term, 1891, before Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiffs, *Potter & Nixon.*

For the defendants, *Martin P. Grey.*

The opinion of the court was delivered by

SCUDDER, J. An application by a petition, signed by at least one-fifth of the legal voters of the township of Commercial, in the county of Cumberland, was made to the law judge of that county, setting forth the desire of said petitioners that not less than $5,000 be charged and paid for licenses thereafter to be granted to sell spirituous, vinous, malt or brewed liquors, by less measure than one quart, within that township. On notice of the application and hearing, an order was made that an election be held to determine whether or not any license shall thereafter be granted in said township for any less sum of money than the amount specified in the petition. This proceeding is under section 4 of the act of March 20th, 1889 (*Pamph. L., p.* 77), entitled "An act to regulate the sale of spirituous, vinous, malt and brewed liquors," and to repeal an act entitled "An act to regulate the sale of intoxicating and brewed liquors," passed March 7th, 1888. The entire act is known as "the high license law," and the act repealed thereby is called "the local option law." This order, dated October 30th, 1890, is before the court for review by *certiorari.*

A preliminary question is raised whether the plaintiffs have any standing in court to use the writ of *certiorari* and have the legality of this order decided. S. Irwin Middleton has owned the Port Norris hotel property eight years, and still continues the owner; and the other plaintiff, Frank Deemer, is the present tenant from year to year, and licensee of the inn and tavern kept there. Neither has suffered any actual loss by the application and order, and the injury threatened to the property and business is prospective and uncertain. As members of the community they have no right to constitute themselves the representatives of all to have it determined whether this statute can be enforced in the manner proposed, and

whether the proceedings under it have been regular. It is only because it will have a special and peculiar effect upon them, or their property, that they have any right to be heard in opposition to this order appointing an election. The recent case of Traphagen et al. *v.* Jersey City, *ante p.* 434, has repeated and emphasized this well-established distinction upon which the right to use this writ is based. The office of the writ of *certiorari,* when used to test the validity of the acts of special statutory tribunals, municipal bodies and public officers, has been so largely extended by the decisions of our courts, that it has become difficult to define exactly in what cases it may or may not be used, and the question has been raised at each advance that has been attempted. The proceedings by information in the name of the attorney general in civil matters, or by indictment in criminal causes, on behalf of the public, have such advantages in determining in one suit and by a single result questions affecting the public interest, and, incidentally, all who are component members of the body politic, that the leaning of the courts has always been towards the use of these public remedies rather than to permit individuals to assert or defend rights in matters which affect the whole public. There may often be great mischief done in the preliminary proceedings under statutes carrying out public improvements; in effecting important changes in the government of municipalities; in police regulations; and more especially in enforcing laws for the assessment and collection of public taxes, by allowing the use of this writ to individuals acting as volunteers, or with a small interest, and to effect merely personal or partisan purposes without regard to the public advantage.

An examination of the cases in our reports will show that our courts have proceeded slowly and cautiously in the allowance of this writ where public officers are acting to enforce a public statute or ordinance, and how gradually the remedy has been extended. *State* v. *Jersey City,* 5 *Dutcher* 170; *Danforth* v. *Paterson,* 5 *Vroom* 163; *Gregory* v. *Jersey City, Id.* 390; *Kean* v. *Bronson,* 6 *Id.* 468; *Montgomery* v. *Trenton,* 7 *Id.* 79; *Ferry* v. *Williams,* 12 *Id.* 332; *Staates* v.

*Washington,* 15 *Id.* 605, will illustrate the disposition of the courts to allow the writ to be used for the protection of private rights, and for defence against private wrongs, where the remedy in this form appears to be appropriate and convenient for such purpose; but not to permit its use for interference with public matters where the prosecutor has no other interest than as a citizen. Gregory *v.* Jersey City has collected the previous cases and defines the widest scope which has been given to this writ; in superintending corporations and tribunals exercising special statutory powers; in matter of highways, taxation and municipal government by statutes and ordinances, even before any proceedings have been taken to put them in force. In Staates *v.* Washington, an ordinance was passed requiring saloon keepers to close their bar-rooms at ten o'clock at night; it had been enforced by official notice to the prosecutor, who closed his bar at a pecuniary loss, and it was said he was entitled to the writ.

In *Hart* v. *Scott,* 21 *Vroom* 585, there was a refusal to grant a license to sell intoxicating liquors unless a fee of $250 was paid under the statute fixing that as the minimum amount, while the charter and ordinance of the city made the charge $50. But in *Paul* v. *Gloucester County, Id.* 585, the writ was allowed to a hotel keeper and owner, who was a legal voter, to test the legality of the Local Option law. This last case may have been followed as a precedent on the application for this writ. It will, however, be noticed that the question of the right to use the writ was not raised, nor was it considered by the court in delivering the opinion. It cannot, therefore, be regarded as a direct authority for the allowance of this writ. Excepting in this last named case there has been none that has gone so far as that now under consideration.

The order for an election under the act upon which these proceedings are had has not in any way affected either of the prosecutors. The license continues good for the term for which it was granted, and any other loss is speculative and contingent. The other parts of the act fixing a minimum fee

for license, graduated by population, are not challenged as illegally affecting the person or property of the prosecutors, and they have submitted to these terms in applying for and receiving a license. It is objected that if an election be had under section 4, and it results in fixing a charge of $5,000 as a fee for license, it will ruin the business and reduce the value of the property, because of their inability to pay so large a sum from the business. But these injurious effects depend on the contingency that a majority of the votes cast at such election shall be in favor of the sum voted upon. If there shall be a majority against it, the prosecutors will not be damaged. As the application is signed by only one-fifth of the legal voters of the township, the result is at least uncertain. If the majority should vote for the large sum named, there is still a further contingency that the owner or his tenant will be able to procure the requisite number of freeholders to recommend his application for license. It cannot be said in advance what license fee will be fixed by the court, nor what action may be taken on the application for license after the election has been decided. Before these have been ascertained any action on the part of the prosecutors to prevent an election is anticipating injuries that have not been and never may be inflicted. It is true, as appears by cases above cited, that writs of certiorari to review the proceedings of public corporations and special statutory tribunals have been sued out by prosecutors whose rights have not been yet directly affected, and before they have actually suffered from their enforcement, but this has been where there was the ability and certainty of such enforcement unless some preventative remedy was afforded. There is always in such cases some law, ordinance or judgment in controversy which is capable of immediate and certain application to the injury of the prosecutor either in his person or in his property rights. Here there is none, and never may be, for the result of the election which shall give the right to the court granting licenses to impose what is called a prohibitory license fee, which will cause the loss and damage apprehended, is undetermined, and the mere order for election

without it will do no harm to the prosecutors. The established ruling in our courts is to the effect that in cases like this a private individual cannot have a writ of *certiorari* unless he has some personal or property interest to be specially, immediately and certainly affected by the act of which he complains.

The objections that have been made to the sufficiency of the notice of application to the law judge of the county, for the order appointing an election, which does not name the large amount of $5,000 as a minimum license fee in that small township, and the effect of fixing a sum for license which is prohibitory under this statute, which it is claimed contemplates licenses at practicable rates to be fixed by the courts, or the voters of the township, are not decided, because the prosecutors are not in a position to raise these questions at this stage of the proceedings.

The writ of *certiorari* will be dismissed, with costs.