70 N.J. Super. 54 (1961)
174 A.2d 754
ANTOINETTE ALTOMARE AND MATTEO ALTOMARE, PLAINTIFFS-RESPONDENTS,
v.
RALPH CESARO AND ANNA CESARO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 2, 1961.
Decided October 20, 1961.
*56 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. George J. Kaplan argued the cause for appellants (Mr. Nathan J. Littauer, attorney).
Mr. Jay Krivitzky argued the cause for respondents (Messrs. Schwartz & Horowitz, attorneys).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendants appeal from the final judgment of the Hudson County Court, Law Division, the result of a jury verdict awarding $10,000 to plaintiff Antoinette Altomare and $1,803.20 to her husband, Matteo Altomare, who sued per quod. The personal injury action instituted by plaintiffs (tenants) against defendants (landlords) was predicated upon the alleged negligence of the landlords in not properly maintaining the apartment they leased to plaintiffs. At the close of plaintiffs' proofs, the trial court denied defendants' motion for an involuntary dismissal; and a motion for "directed verdict" in favor of defendants was likewise denied at the close of the entire case. There are three facets to defendants' argument on appeal: (1) plaintiff's injury was not proximately related to the wrongful act of the defendants; (2) plaintiff was guilty of contributory negligence, as a matter of law; (3) the trial court erred in admitting into evidence the defective light fixture.
Plaintiffs' modest, second floor, three-room apartment was a part of a tenement house, commonly known as 2512 Central Avenue, Union City, New Jersey, which consisted of two *57 floors with apartments for three families. All of the electrical fixtures in the apartment were operated by means of wall switches except a small fixture in the bathroom, and a two-socket fixture in the living room, installed flush to the middle of the ceiling, which was operated by a pull chain with a string attached. Occupancy of the apartment was assumed by plaintiffs on September 17, 1957, and from the very beginning they experienced difficulty with the living room ceiling light fixture; one small bulb never lit and the other, a large bulb, would only light after the string chain had been pulled several times. On five occasions, according to the testimony, the landlords were notified as to the defective condition of this fixture. Mrs. Altomare first complained to Mr. Cesaro the latter part of September 1957, again three or four weeks thereafter, and on a third occasion about a month later. Plaintiffs' niece Theresa Altomare, another tenant at the same location and a frequent visitor, spoke to Mrs. Cesaro early in May 1958 concerning the trouble her aunt was having with her living room fixture, also on another occasion "a week or a week and a half later," at which time Mrs. Cesaro replied, "Oh, didn't he come yet[?]" On these occasions, assurances were given by defendants that the condition would be remedied. Mr. Cesaro at one time gave as his reason for delay  "He says he was busy." Defendants denied that these alleged complaints were ever made to them.
On May 22, 1958, about 4 P.M., plaintiff Antoinette Altomare decided to do some sewing in the living room. There was not sufficient light from the two windows as they were covered with venetian blinds and faced a side wall adjoining the premises. A small floor lamp was on the side of the room opposite to where she kept her sewing machine. When she attempted to light the ceiling bulb, she pulled the chain two or three times, as was her custom, and it did not light; she continued an additional three or four times, without success. Assuming the bulb was "dead," Mrs. Altomare decided to replace it. She obtained a step ladder *58 which, after opening, she observed to be steady, tested it and climbed to about the fourth step, and started to unscrew the bulb with one hand while holding on to the ladder with the other. She testified:
"When I was unscrew the bulb it was a little bit tight. I keep unscrew again. The last turn I heard a noise, then is a big flash come out. I was fright. I went back. Then I grabbed myself by ladder and hit my breast. I got hurt. I fell down on my feet, then I fell back this way."
It should be noted in limine that counsel for the defendants conceded at oral argument that the light fixture and electrical wiring in question were defective at the time of the accident, and that plaintiffs' apartment was an integral part of a tenement house, as contemplated by the New Jersey Tenement House Act, R.S. 55:1-1 et seq. The statute, inter alia, provides: "Every tenement house and all the parts thereof, shall be placed and maintained in good repair * * *." R.S. 55:7-1. This mandate to maintain in good repair is sweeping and relates to "all parts" of a tenement house; it imposes a duty upon a landlord irrespective of any contractual obligation. The act is "deemed to establish a standard of conduct, and to permit the intended beneficiaries to rely upon a negligent failure to meet that standard in a common law action for negligence." Michaels v. Brookchester, Inc., 26 N.J. 379, 386 (1958).
The gravamen of appellants' contention is that the injuries sustained by Mrs. Altomare were the direct result of her own intervening acts, and that the accident was not the natural and proximate result of the landlords' negligence; that from the proof submitted fair-minded men could not honestly differ as to such a conclusion and, therefore, a jury question was not involved. Reliance is placed upon Glaser v. Hackensack Water Co., 49 N.J. Super. 591 (App. Div. 1958). The facts there were dissimilar. The injuries suffered by plaintiff in that case were occasioned by her own negligence in descending the stairway so rapidly that she lost her footing *59 and fell. The proximate cause was not the unannounced opening of the garage, reading of the meter and the closing of the door by the meter reader for the water company. See Powers v. Standard Oil Co., 98 N.J.L. 730 (Sup. Ct. 1923), affirmed per curiam 98 N.J.L. 893 (E. & A. 1923), and Monaco v. Comfort Bus Line, Inc., 134 N.J.L. 553, 559 (E. & A. 1946), referred to in the Glaser opinion, for support of the proposition that a trial judge may, under proper circumstances, hold as a matter of law that an injury is not proximately related to the alleged wrongful act.
Our Supreme Court has determined that a motion for judgment at the close of trial should be granted where "the judge, by the application of the reasoning processes of the mind to the evidence adduced in the case, may properly conclude that fair-minded men cannot honestly differ as to the conclusions to be drawn from the proofs." Kopec v. Kakowski, 34 N.J. 243, 244 (1961), and Franklin Discount Co. v. Ford, 27 N.J. 473, 487 (1958). "The trial court, in considering such a motion, cannot weigh the evidence but must accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences which are to be drawn therefrom in his favor." Kopec v. Kakowski, supra; Melone v. Jersey Central Power and Light Co., 18 N.J. 163, 170 (1955); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102, 106 (1950).
The argument advanced is that plaintiff's injury was not brought about in the ordinary course of events as a result of landlords' unlawful act; their negligence was not a substantial factor in causing the accident; the evidence does not fit the "standard of naturalness"; and plaintiff's activity was an intervening efficient cause which destroyed any causal connection between the asserted injury and the defendants' alleged negligence. The rationale of Lutz v. Westwood Transportation Co., 31 N.J. Super. 285 (App. Div. 1954), certification denied 16 N.J. 205 (1954), is invoked. The facts in that case are distinguishable. The conclusions of *60 law and the authorities therein discussed, to the extent applicable to the case sub judice, do not perforce support defendants' cause.
In Mitchell v. Friedman, 11 N.J. Super. 344 (App. Div. 1951), mentioned in the Lutz case, a tenant sued to recover for injuries sustained as a result of admitted negligence of defendants; the landlords had failed to repair the plumbing system damaged by fire to the extent that the water pressure became insufficient to flush automatically the toilet in plaintiff's apartment. Twelve days after the fire, plaintiff injured her back as a result of hauling pails of water from the bathtub to the toilet for flushing it. This court, in affirming the judgment below, held that the act of the defendant need not be the only factor in bringing about the injury, but it must be a substantial factor, and we further said: "* * * Whether the injury received by plaintiff was the `natural' result of defendants' negligence, was a question for the jury," citing Batton v. Public Service Corp., 75 N.J.L. 857 (E. & A. 1908).
The substantial factor doctrine, in recent years, has been recognized and applied repeatedly in the judicial opinions in our State. See Melone v. Jersey Central Power & Light Co., supra (30 N.J. Super., at page 105); Hartman v. City of Brigantine, 42 N.J. Super. 247, 261 (App. Div. 1956), affirmed 23 N.J. 530 (1957); Martin v. Bengue, Inc., 25 N.J. 359, 374 (1957); Rappaport v. Nichols, 31 N.J. 188 (1959); Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 135 (App. Div. 1960); Della Cerra v. Burns, 69 N.J. Super. 110, 118 (App. Div. 1961). See, also, Prosser on Torts (2d ed. 1955), § 47, p. 256. The precise occurrence of injury need not be foreseen by a tortfeasor "so long as it can be said that the injury was the natural and probable consequence of the wrongful act and that it was within the realm of foreseeability that some harm might result to the plaintiff." Hartman v. City of Brigantine, supra (42 N.J. Super., at page 262). Accord, Millman v. U.S. Mortgage & Title Guaranty Co., 121 *61 N.J.L. 28, 36 (Sup. Ct. 1938); Bacak v. Hogya, 4 N.J. 417, 424 (1950); Mitchell v. Friedman, supra (11 N.J. Super., at page 348); Glaser v. Hackensack Water Co., supra (49 N.J. Super., at page 598). The decisions dealing with the relativity of causation in tort cases are manifold, and no helpful purpose would be served by attempting to assemble or analyze them here. Suffice it to refer to Judge Conford's observation in Avedisian v. Admiral Realty Corp., supra (63 N.J. Super., at page 134), that the rule of "intervening causes" is a concept having no independent usefulness in determining the scope of responsibility for consequences of negligent conduct. Ordinarily, proximate and intervening causes are questions for the jury. Martin v. Bengue, Inc., supra (25 N.J., at page 374).
As tenants, plaintiffs were entitled to the ordinary and customary conveniences associated with the rental of their living quarters, including light from the fixtures installed for that purpose. Defendants' duty emanated not only from a landlord-tenant relationship, but also from the statutory obligation to maintain properly their tenement house. The dangerous consequences of a defective electric system are commonly understood. Mrs. Altomare wanted to sew in her living room. The daylight from the shaded windows was inadequate and the single bulb in the two-bulb socket in the ceiling fixture which had previously functioned after several pulls on the drop-chain would not light. She assumed that it was "dead"  a normal assumption  so she attempted to replace it, using a household step ladder to reach the ceiling light bulb. There was nothing unnatural or extraordinary about such a course of procedure. Was she not entitled to so act without being catapulted from the ladder to the floor by the shock of a sudden noise and a "short-out" electrical flash? Was not the landlords' neglect, after notice, the proximate cause of the accident and plaintiff's consequent injuries? Whether we apply the substantial factor rule or the foreseeability test, or both, to the evidence in the present case, it becomes clear that the trial court *62 properly submitted to the jury for its solution the issue of proximate cause.
The assertion that Mrs. Altomare knew of the deficiency in the lighting system and, when she acted as she did, assumed the risk of impending danger, created an issue which was subsumed under the defense of contributory negligence. See Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439, 443 (1955), certification denied 20 N.J. 534 (1956); Hartman v. City of Brigantine, supra (23 N.J., at page 537); Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44 (1959); Kaufmann v. Huss, 59 N.J. Super. 74, 76 (App. Div. 1960). For a general discussion, note 2 Restatement, Torts, § 466, p. 1230; Prosser on Torts, supra, § 55, pp. 303, 304; 2 Harper and James, Torts, § 22.2, p. 1201 (1956). "Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court." Battaglia v. Norton, 16 N.J. 171, 179 (1954). As this court said in Scheirek v. Izsa, 26 N.J. Super. 68, 72 (App. Div. 1953), "the existence either of contributory negligence or of its twin, assumption of risk, is customarily a preeminent question of fact for the jury." A tenant's knowledge of a defective condition may be pertinent to such defenses. Rivera v. Grill, 65 N.J. Super. 253, 257 (App. Div. 1961), certification denied 34 N.J. 471 (1961). The trial judge properly submitted the defense of contributory negligence to the jury.
The last point for consideration relates to the admissibility of the light fixture. Two witnesses, whose testimony stood uncontradicted, testified that the condition of the fixture on the day of the trial was the same as on the date of the accident. This was a sufficient foundation for admitting the exhibit in evidence. Parisi v. Carl W. Bush Co., 4 N.J. Super. 472 (App. Div. 1949); cf. Johnson v. Mason, 70 N.J.L. 13 (Sup. Ct. 1903).
The facts and the law amply support the trial court and the verdict of the jury. The judgment below is affirmed.