97 N.J. Super. 75 (1967)
234 A.2d 415
JEANNIE CONROY, AN INFANT, BY HER GUARDIAN AD LITEM, JOHN CONROY AND MARY JANE CONROY, PLAINTIFFS-APPELLANTS,
v.
10 BREWSTER AVENUE CORP., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1967.
Decided September 28, 1967.
*77 Before Judges SULLIVAN, FOLEY and LEONARD.
Mr. Gerald E. Monaghan argued the cause for appellants (Messrs. Leyden, Breslin, Monaghan & Leyden, attorneys; Mr. Kenith D. Bloom, on the brief).
*78 Mr. Edward A. Olson argued the cause for respondent (Messrs. Winne & Banta, attorneys; Mr. John D. Harrington, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiffs appeal from a judgment entered upon a jury verdict of no cause of action.
Defendant was the owner of a two-family house located in Ridgefield Park, New Jersey. In August 1963 Mr. and Mrs. Conroy, parents of plaintiff Jeannie, entered into a two-year lease of three and one-half rooms on the ground floor of the house, and the use of the basement. The basement contained a tub equipped with a water connection which supplied hot and cold water. The hot water heater was connected to the furnace which served to furnish heat and hot water to all portions of the building, including the portions leased to plaintiffs. The heating system was equipped with a thermostat to control the heat and an apostat to control the temperature of the hot water supplied to the living quarters and the basement tub. The lease was negotiated by the Conroys and Allen Krichman, a stockholder of defendant, who acted as its agent and appears to have been the principal of the corporation.
It is undisputed that the parties agreed orally that the lessor would be responsible for "major" repairs of the leased premises, and the lessees for "minor" items of repair. The operating cost of the heating system and water supply was the obligation of the lessees.
The Conroys took possession on Labor Day 1963. They claimed that in the following months they found the hot water supply to be "too hot" and complained of this to Krichman. Krichman denied that there were such complaints. According to the Conroys they did not attempt to adjust the apostat and, indeed, they had no knowledge of the existence or operation of such a device.
On December 10, 1963 Jeannie, aged 7 years 11 months, was in the basement playing "catch" with her sister Nancy. *79 She testified that she was sitting on the "rim" of the tub, or as she called it the "sink." In the course of their play Nancy threw Jeannie a ball. Jeannie leaned back to catch it, lost her balance and fell into the tub. In falling her right arm accidentally struck the hot water faucet and caused it to be turned on. Scalding water poured out, inflicting second and third degree burns on her right arm from the armpit to the wrist, the right side of her breast and her right upper thigh. A lengthy hospitalization followed, and in spite of the fact that Jeannie has received extensive skin grafting there still remains scar tissue which will require future hospitalization and involve substantial expense to repair.
There was evidence that later that evening Thomas McArow, brother of Mrs. Conroy, accompanied by the Conroys, inspected the apostat. It was so dusty that he had to clean it to make certain what it was. Having done so he found that it was set for a temperature exceeding 240° . He said that when he turned on the faucet "the steam in that water was unbelievably hot," adding that "when you took your hand out your hand would turn red from the faucets." He reduced the temperature level "to about 110, 120."
The court, in charging the jury, submitted the issue of Jeannie's contributory negligence. The charge was unobjectionable as a statement of the law, provided that the issue of contributory negligence was evidentially supported. At this point we should note that at the trial plaintiffs' attorney did not request that this issue raised by the pleadings be withdrawn, nor did he object to the inclusion in the charge the instruction respecting it. The present contention that contributory negligence was not in the case, so to speak, was made for the first time on a motion for a new trial (which was denied) and is now reiterated before us and presented as "plain error." We will pass for a moment the implications and impact of the plain error rule.
We are satisfied that in the circumstances of this case it was error for the court to have submitted the issue *80 of contributory negligence to the jury. Jeannie, as a member of the Conroy household, was an invitee in the basement and was free to use it for play which was not inherently dangerous, or did not involve activity which might subject her to a hazard which was foreseeable by her. Conduct which does not expose one to any foreseeable risk of a particular injury through a defendant's negligence is not available as a defense of contributory negligence. Prosser, Law of Torts (3d ed. 1964), § 64, p. 432. Specifically, Jeannie was engaged in a simple act of play which is known to and practiced by most children. In itself it was not hazardous. Nor was sitting on the rim of the tub, in itself, contributory negligence such as would bar recovery in the factual context of the case, since Jeannie could not foresee that if, in falling, she accidentally struck the faucet there would emanate from it a hidden hazard of what amounted to live steam.
Furthermore, viewing the problem presented by the charge on contributory negligence purely on the basis of accepted principles of proximate cause, we likewise reach the conclusion that the court was in error in submitting the issue to the jury.
In La Morgese v. Kern-O-Mix, Inc., 82 N.J. Super. 581, 586 (App. Div. 1964), this court said that there must be evidence in the record from which a legitimate inference may be drawn that plaintiff's conduct was negligent and that his negligence was a proximate cause of the accident in which he was involved. There we held that there was no evidence that the alleged smoking of plaintiff caused a load of bituminous concrete which was being delivered to plaintiff's truck to burst into flames. Thus, said the court, the issue of contributory negligence should not have been submitted to the jury. So, too, in Massotto v. Public Service Coord. Transport, 58 N.J. Super. 436 (App. Div. 1959), certification denied 31 N.J. 550 (1960), it was held that plaintiff's walking through a moving bus which came to a sudden and abrupt stop causing plaintiff to be thrown and injured, did not proximately contribute to the accident, the court saying, "the *81 record is barren of any evidence from which a legitimate inference may be drawn that her conduct in any way contributed to the happening of the accident resulting from the admittedly abrupt halting of the bus." 58 N.J. Super., at p. 440.
For these reasons we conclude that it was error for the court to submit the issue of contributory negligence to the jury on the facts of this case.
It is true, as defendant urges, that the plain error rule, R.R. 1:5-3(b), is sparingly employed and the trial error in question must be such as to convince the court that, of itself, it had a clear capacity to bring about an unjust result. See Jurman v. Samuel Braen, Inc., 47 N.J. 586, 590-591 (1966).
In the case before us the jury returned a general verdict of no cause of action. We cannot know whether or not this verdict was founded upon a finding of contributory negligence. However, the erroneous intrusion in the case of the defense of contributory negligence which, is sustained by defendant, was completely dispositive of plaintiff's claim, had a clear capacity to create a manifest injustice. See La Morgese v. Kern-O-Mix, Inc., supra, at p. 586.
We therefore invoke the plain error rule and hold that prejudicial error was committed which requires reversal.
Since the case must be retried we think it well to express our views on another point which plaintiffs raise on this appeal. On the day of trial they moved to amend the pretrial order to include a count based upon implied warranty. The trial court declined to grant the amendment. We pass the question of the timeliness of the motion and deal with the merits of the implied warranty thesis, as apparently the trial judge did.
Plaintiffs' argument is that an implied warranty claim for relief is justified by the holdings in Cintrone v. Hertz Truck Leasing, etc. 45 N.J. 434 (1965), and Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965). We cannot agree. From our reading of these cases we conclude *82 that the holdings therein apply only to the mass producer or the mass lessor, as the case may be. There is no indication that the court intended that the implied warranty concept was to be applied to cases involving isolated sales or leases. Therefore, such transactions in our view continue to be governed by the established rule that upon the leasing of a house or lands there is no implied warranty or condition that the premises are fit or suitable for the purposes specified or for the use to which the lessee proposes to devote them. See LaFreda v. Woodward, 125 N.J.L. 489 (E. & A. 1940). The lessor is, of course, liable for fraudulent concealment of a latent defect, but an action so based sounds in tort, as distinguished from implied warranty.
One more subject requires brief discussion. Defendant argues in support of the judgment in its favor that it was not liable because upon the leasing of the premises and the agreement of the Conroys to make "minor repairs" it ceased to have any responsibility for the furnace and appurtenances thereof. We cannot agree with this contention.
First of all, the furnace and the hot water heating device were furnished by defendant for the common use of tenants of the dwelling. Under these circumstances defendant is deemed to have retained control over the furnace, and its duty with regard to it was not diminished by the agreement of the Conroys to make minor repairs to the premises. Secondly, as defendant's attorney conceded on his argument for a judgment of involuntary dismissal at the trial, there was evidence from which it could be inferred that at the time of the leasing the apostat was set for a temperature in excess of 240° . Thus, the latent hazard which caused the infant plaintiff to be scalded was present at the time of the leasing, and at a time when defendant had complete and absolute control of the furnace and its appurtenances. This hazard was never made known to the Conroys. We do not think that the mere leasing of the first floor and basement of the building charged them with the control and maintenance of a hazard which was not *83 made known to them nor discoverable upon ordinary inspection. The court properly submitted the question of defendant's negligence to the jury.
Reversed.