119 N.J. Super. 332 (1972)
291 A.2d 577
LILLIAS BERZITO, PLAINTIFF-RESPONDENT,
v.
VINCENT GAMBINO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 24, 1972.
Decided June 2, 1972.
*333 Before Judges COLLESTER, MINTZ and LYNCH.
Mr. Joseph J. Triarsi argued the cause for appellant (Messrs. Pisano & Triarsi, attorneys).
Mr. Nicholas J. Schuldt argued the cause for respondent.
PER CURIAM.
Defendant appeals from a judgment awarding plaintiff a rental rebate in the amount of $1,180. The judgment was subsequently amended to $973.75 by allowing defendant credit in the sum of $206.25 for rent due from plaintiff for the period August 27, 1970 to November 14, 1970.
Defendant owns a two-story brick dwelling consisting of two apartments in Elizabeth. In June 1968 plaintiff rented the first floor apartment. About September 1, 1968 the larger second floor furnished apartment became vacant. Plaintiff inspected it and orally agreed to rent same as furnished at a weekly rental of $35 with heat, hot water and gas supplied. She testified that defendant agreed to make the apartment "livable" and to make certain specific repairs, it having been left in a deplorable condition by the prior tenants.
The trial judge's opinion recites that plaintiff defaulted in the payment of the weekly rent as of February 23, 1970. On June 18, 1970, on a trial for summary dispossession of plaintiff *334 for non-payment of rent, the trial judge found that plaintiff-landlord (defendant in the present proceeding) had breached the warranty of habitability, and reduced the rental to $75 per month retroactive to February 23, 1970. Plaintiff and her three children finally vacated the premises on November 14, 1970.
Defendant testified that the apartment had been condemned and a "sticker" posted to this effect. Subsequently defendant rehabilitated the apartment. The premises were then reinspected by the building inspector in February 1968. The inspector removed the condemned notice, and apparently a certificate of occupancy was issued. The apartment was then rented to two sisters for about three months. They left it in a dirty condition but the furniture was still good. Defendant further testified that plaintiff rented the premises "as is" and that plaintiff extensively damaged the furniture and the premises.
In this proceeding the plaintiff-tenant seeks to recover a portion of the rent paid from October 1968 to February 23, 1970 on the theory that she never received what she had impliedly bargained for. Her complaint alleges that she had impliedly bargained for an apartment at a rental worth $35 weekly, but the fair rental value of what she received was only about $75 monthly. Defendant counterclaims for the amount of the rent remitted to plaintiff in the summary dispossession proceeding.
The trial court found that defendant promised plaintiff that he would make the premises "livable" and "agreed to make specific repairs." The trial court stated that the premises were in fact substantially uninhabitable. In support of this conclusion the trial court noted the following deficiencies:
* * * few screens, some ripped; no storm windows; missing windows boarded up; gaps in window panes, sash and door frames; no radiators in two of the four rooms; holes in floors and walls; falling plaster; bath tub resting on wooden blocks; inoperable electric fixtures; sewage backup in cellar, and infestation by roaches and rodents. As an example of how one problem aggravated another, *335 the regulator for the oven, which was a main source of heat, had to be replaced, but the gas company refused to do so until the roaches had been exterminated. In addition, the furniture with which the apartment was furnished was discarded by the tenant without objection from the landlord. [114 N.J. Super. at 127-128]
However, the record indicates that all the furniture except for one chest of drawers was placed in the basement by plaintiff on an unspecified date. Defendant testified that he had purchased new furniture in February 1968, but "* * * it wasn't new anymore after she got through with it."
Accepting the finding of the trial court of an express agreement by defendant to render the premises "livable" and to make specific repairs, we note that plaintiff's major complaint was the roach infestation. She purchased cans of spray which she used unsuccessfully. Defendant testified he furnished extermination service from time to time. The sewage backups were apparently caused by foreign objects deposited in the house sewer line which was cleared by plumbers engaged by defendant, although according to plaintiff defendant was dilatory in removing the sewer remains from the basement. More importantly, we note that although plaintiff stated that she complained of the conditions to defendant, she lived in the apartment for one year before making any complaint to the municipal authorities. At that time she admits that defendant told her that she "had to get out" because she was costing him money.
The trial judge predicated his finding in favor of plaintiff on the ground that defendant violated an express covenant to make the premises livable and to make specific repairs rather than upon a violation of an implied warranty of habitability. Since there is sufficient credible evidence in the record to support this determination, we accept same. State v. Johnson, 42 N.J. 146 (1964); Greenfield v. Dusseault, 60 N.J. Super. 436 (App. Div. 1960), aff'd o.b. 33 N.J. 78 (1960).
A tenant's right to claim a constructive eviction will be lost if he does not vacate the premises within a reasonable *336 time after the right comes into existence. Reste Realty Corporation v. Cooper, 53 N.J. 444 (1969). This principle was reaffirmed in Marini v. Ireland, 56 N.J. 130 (1970). There the tenant was in possession of an apartment under a one-year lease in a two-family duplex building in Camden. The court held that in a residential letting the landlord is held to an implied covenant against latent defects, which is another way of saying habitability and livability fitness. The tenant was permitted, after notice to the landlord and his failure to remedy the situation, to repair a vital facility and to offset the cost of such repairs against the rent. This ruling was designed to afford a tenant in these days of housing shortage an alternative remedy to that of constructive eviction, but the court (at 146-147) significantly observed:
This does not mean that the tenant is relieved from the payment of rent so long as the landlord fails to repair. The tenant has only the alternative remedies of making the repairs or removing from the premises upon such a constructive eviction [Emphasis added]
In Academy Spires, Inc. v. Brown, 111 N.J. Super. 477 (Cty. D. Ct. 1970), the court drew a distinction between uninhabitability and "amenities" and in the course of its opinion noted that the landlord failed to supply heat, hot water, elevator and garbage disposal service to a ninth floor apartment in a 400 unit apartment complex. Failure to supply such things is a breach of the implied covenant of habitability for which a diminution in the monthly rent would be allowed. However, malfunction of venetian blinds, water leaks, wall cracks, lack of painting are "amenities" and do not come within the category of uninhabitability. Such items will not be considered in diminution of the rent. The court concluded that a tenant in a 400 unit apartment complex can hardly be expected to make vital repairs such as to the elevator service, to render the premises habitable. Hence, the doctrine pronounced in Marini, supra, was extended to grant the tenant an abatement in the rent in lieu of making repairs.
*337 Clearly a portion of the patent defects complained of by plaintiff were "amenities." In any event, we deem it significant that plaintiff was only a weekly tenant. She did not have to rely upon constructive eviction to vacate the premises. Nevertheless, despite all the shortcomings found by the trial court, plaintiff remained in possession until November 14, 1970.
As already noted the final rent payment prior to the summary dispossess proceeding on June 18, 1970 was on February 23, 1970. Thus, plaintiff was then approximately 16 weeks in arrears. She made no repairs and asserted that she remained there only because of the critical housing shortage. Although her son-in-law urged her to try and find a more suitable apartment, there is no competent proof to indicate that she actually made any effort to do so. The sole evidence on this point was the hearsay testimony of defendant that it was only after he asked plaintiff to vacate the premises that she told him she had unsuccessfully sought another apartment. Plaintiff received an allotment from the County Welfare Board (Board) which included the rent in full which she paid defendant. There is no indication in the record that she ever complained to the Board or enlisted the aid of any agency to find an apartment for her. We cannot conclude from the record that plaintiff in fact endeavored to find other quarters.
The present trend of the law is in the direction of consumer protection. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960). The necessity for consumer protection in situations involving over-reaching upon the underprivileged is particularly recognized in N.J.S.A. 56:8-1 et seq. and Kugler v. Romain, 58 N.J. 522 (1971). This trend has been extended to landlord-tenant relationships. Academy Spires, Inc. v. Brown, supra at 484; cf. Javins v. First National Realty Corporation, 428 F.2d 1071, 1079 (D.C. Cir.1970), cert. den. 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).
However, just as we must be mindful of the housing shortage and the plight of the tenant, we should be cognizant of *338 the problems confronting the landlord. An equitable balance needs to be struck between these competing interests.
As observed in Marini, supra, so here, plaintiff had alternative remedies  repair or remove within a reasonable time. Perhaps it may be unrealistic to have expected plaintiff, a weekly tenant receiving welfare benefits, to make repairs and offset same against the rental payments. She probably was unaware of any such right. However, when it became or should have become apparent to her that defendant would not make the agreed upon repairs, she should have sought other quarters and terminated her weekly tenancy upon one week's notice. 26 N.J. Practice (LeWine, Landlord and Tenant Law), § 3203 (1962).
We conclude that the summary dispossess proceeding in which plaintiff was allowed a substantial diminution in the rental for a period of almost nine months effected an equitable disposition of the parties' respective claims and that neither party is entitled to any further relief.
Reversed.