123 N.J. Super. 48 (1973)
301 A.2d 463
JOSEPHINE DWYER, PLAINTIFF-RESPONDENT,
v.
SKYLINE APARTMENTS, INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 29, 1973.
Decided March 8, 1973.
*50 Before Judges CARTON, MINTZ and LARNER.
Mr. Herbert Klein argued the cause for appellant (Messrs. Kreiger and Klein, attorneys).
Mr. Robert V. Schauer argued the cause for respondent (Loftus, Schauer and Cuozzi, attorneys).
*51 The opinion of the court was delivered by LARNER, A.J.S.C., Temporarily assigned.
Defendant appeals from a judgment entered for plaintiff in the sum of $1,500 by a judge of the Bergen County District Court after a trial without a jury.
Plaintiff was a tenant for 15 years in a multiple-family garden apartment development owned by defendant. On February 8, 1971 she was in the bathtub of her apartment, and as she turned on the hot water faucet the entire "fixture came out of the tile," as a result of which scalding water gushed out of the pipe causing burns to various parts of her body.
The testimony in the case was limited to that of plaintiff, who described the faucet after it came out of the wall as "very corroded." However, she had no idea of its condition prior to the accident since the corrosion was on the portion of the faucet which was in the wall, and as a consequence no complaint was ever made to the landlord. It was in essence a latent defect unknown to the tenant, unknown to the landlord and not discernible on reasonable inspection.
The trial judge found for plaintiff despite the absence of actual or constructive notice of the condition by the landlord. He concluded that the landlord is strictly liable because of its contractual responsibility flowing from a continuing implied covenant of habitability. In effect, he concluded that negligence concepts are no longer viable in personal injury claims by tenant versus landlord arising out of the condition of the tenant's premises.
A brief review of some of the precedents controlling landlord-tenant liability is in order.
A landlord of a multiple-family dwelling has the duty to maintain all parts of the structure and equipment in good repair, including the premises within the confines of the tenant's apartment. Michaels v. Brookchester, Inc., 26 N.J. 379 (1958); Altomare v. Cesaro, 70 N.J. Super. 54 (App. Div. 1961). This duty as it applies to the tenant's *52 premises came about through the rejection of the caveat emptor theory and the application of the Tenement House Act (N.J.S.A. 55:1-1) now known as Hotel and Multiple Dwelling Act (N.J.S.A. 55:13A-1). Ibid.
Furthermore, our courts have consistently held that regardless of the application of the statute, the landlord has the duty to maintain and repair those facilities in or out of the tenant's premises which are an integral part of the equipment under his control, such as water pipes, heating pipes and radiators, plumbing fixtures, electrical equipment and the like. Coleman v. Steinberg, 54 N.J. 58 (1969); Conroy v. 10 Brewster Ave. Corp., 97 N.J. Super. 75 (App. Div. 1967); Altomare v. Cesaro, supra; Restatement, Torts 2d, §§ 360 and 361 (1965).
Hence, under either the theory of the landlord's obligations under the Hotel and Multiple Dwelling Act or the theory of control of the water supply system and all its parts, defendant in this case unquestionably had the basic duty to maintain and repair the piping and faucets in and leading to plaintiff's bathtub.
However, the nexus between duty and liability is proof of negligence. Negligence in this context requires not only proof of the condition which caused the injury but that the condition was known or should have been known by the landlord prior to the occurrence, so that he had an opportunity to correct it.
Since his duty is not to insure the safety of tenants but only to exercise reasonable care, a landlord is liable only for injurious consequences to a tenant by reason of defects "of which he has knowledge or of defects which have existed for so long a time that * * * he had both an opportunity to discover and to remedy." Francisco v. Miller, 14 N.J. Super. 290, 296 (App. Div. 1951); Coleman v. Steinberg, 54 N.J. 58, 63 (1969); Ellis v. Caprice, 96 N.J. Super. 539, 547 (App. Div. 1967); Mikrut v. Pellow, 65 N.J. Super. 14, 18 (App. Div. 1961), certif. den. 34 N.J. 464 (1961); Schnatterer v. Bamberger & Co., 81 *53 N.J.L. 558 (E. & A. 1911); Restatement, Torts 2d, §§ 360 and 361 (1965); Harper & James, Law of Torts, § 27.17; Prosser, Law of Torts (3d ed. 1964), § 63.
This basic element of actual or constructive notice in the area of landlord liability arising out of the duty to maintain and repair rented premises is ingrained in our law as a necessary prerequisite to a finding of negligence  the failure to exercise reasonable care. An exception of course exists in cases where the landlord created the condition. Coleman v. Steinberg, supra.
The proofs at trial establish beyond dispute that the defect was a latent one not known or reasonably discoverable by the defendant. Hence, under existing legal principles the landlord cannot be held liable for the unfortunate occurrence. The mere happening of the event resulting from a latent defect followed by injurious consequences is not sufficient in itself to impose liability unless the foregoing concepts of the law of negligence have been rendered obsolete by the current advances in the law dealing with the landlord-tenant relationship.
The trial court and the plaintiff point to the landmark case of Marini v. Ireland, 56 N.J. 130 (1970), as indicative of a redefinition of the liability of a landlord for injuries sustained by a tenant. It is contended that the logical extension of the language in that opinion requires the conclusion that proof of negligence with its traditional requisites is no longer necessary for recovery.
In Marini the Supreme Court considered the duties of the landlord and the legal consequences thereof in the context of a summary action for dispossess in the County district court. It held that the landlord should be held to an implied covenant against latent defects or an implied covenant of habitability. See also, Reste Realty Corp. v. Cooper, 53 N.J. 444, 454 (1969). In further articulation of this undertaking the court in Marini stated:
*54 * * * Actually it is a covenant that at the inception of the lease, there are no latent defects in facilities vital to the use of the premises for residential purposes because of faulty original construction or deterioration from age or normal usage. And further it is a covenant that these facilities will remain in usable condition during the entire term of the lease. In performance of this covenant the landlord is required to maintain those facilities in a condition which renders the property livable. [56 N.J. at 144]
From this premise the court reached the conclusion that this covenant of habitability and the tenant's covenant to pay rent were mutually dependent. Hence, it was held that if a landlord fails to make repairs of vital facilities necessary to maintain the premises in a livable condition, the tenant may do so and deduct the cost thereof from future rents. Recourse to such self-help, however, "must be preceded by timely and adequate notice to the landlord of the faulty condition in order to accord him the opportunity to make the necessary replacement or repair."
The consequence of this holding was that the tenant "has only the alternative remedies of making the repairs or removing from the premises upon such a constructive eviction."
In essence, Marini only concerns itself with the pressing social problems involved in the dilemma of a tenant faced with premises not fit for habitation and the inability to assert a defense to an action in dispossess under the former technical procedures applicable to such a summary proceeding. Marini and the subsequent cases of E. & E. Newman, Inc. v. Hallock, 116 N.J. Super. 220 (App. Div. 1971); Berzito v. Gambino, 119 N.J. Super. 332 (App. Div. 1972), certif. granted 62 N.J. 67 (1972); Sprock v. James, 115 N.J. Super. 111 (App. Div. 1971), and Academy Spires, Inc. v. Brown, 111 N.J. Super. 477 (Cty. D. Ct. 1970), spell out a just and practical approach to the protection of the rights of tenants vis-a-vis landlords in the sphere of eviction and its dire social consequences.
The development of this new "bill of rights" for tenants, however, does not necessarily lead to the imposition *55 of liability in tort on a landlord bottomed upon a concept of a continuing warranty of habitability. We are of the opinion that the language of the Supreme Court in the context of the narrow issue in Marini was not intended to overturn existing principles of law applicable to tort actions for personal injuries by tenants versus landlords. If the law is to be changed in that direction through a major extension of the rationale expressed in Marini, such determination is within the province of the Supreme Court, not within the ambit of power of the trial court or this intermediate appellate court. State v. Moffa, 79 N.J. Super. 425, 432 (App. Div. 1963), aff'd 42 N.J. 258 (1964).
It is also argued that the application of the strict liability doctrine to a seller and manufacturer of a product in Henningsen v. Bloomfield Motors, 32 N.J. 358 (1960), to a mass builder vendor of real estate in Schipper v. Levitt & Sons, Inc., 44 N.J. 70 (1965), and to a lessor of a motor vehicle in Cintrone v. Hertz Truck Leasing, 45 N.J. 434 (1965), when considered in the context of the rationale in Marini, completes the circle so as to impose strict liability on every vendor, distributor and lessor of personalty or realty engaged in a commercial enterprise. Such a conclusion is unwarranted. The underlying reasons for the enforcement of strict liability against the manufacturer, seller or lessor of products or the mass builder-vendor of homes do not apply to the ordinary landlord of a multiple family dwelling.
Such a landlord is not engaged in mass production whereby he places his product  the apartment  in a stream of commerce exposing it to a large number of consumers. He has not created the product with a defect which is preventable by greater care at the time of manufacture or assembly. He does not have the expertise to know and correct the condition, so as to be saddled with responsibility for a defect regardless of negligence.
An apartment involves several rooms with many facilities constructed by many artisans with differing types of expertise, *56 and subject to constant use and deterioration from many causes. It is a commodity wholly unlike a product which is expected to leave the manufacturer's hands in a safe condition with an implied representation upon which the consumer justifiably relies.
The tenant may expect that at the time of the letting there are no hidden dangerous defects known to the landlord and of which the tenant has not been warned. But he does not expect that all will be perfect in his apartment for all the years of his occupancy with the result that his landlord will be strictly liable for all consequences of any deficiency regardless of fault. He expects only that in the event anything goes wrong with the accommodations or the equipment therein, the landlord will repair it when he knows or should know of its existence; and that if injury results liability will attach.
To apply the broad brush of strict liability to the landlord-tenant relationship in a dwelling house would impose an unusual and unjust burden on property owners. It would mean that the landlord would be faced with liability for every injury claim resulting from any untoward condition in every cranny of the building, whether it is reasonably foreseeable or not. How can a property owner in any practical sense prevent a latent defect or repair it when he has no way of detecting it? And if he cannot prevent the defect or the occurrence, why should he be liable?
The foregoing queries are posed simply to demonstrate that the policy considerations underlying the adoption of strict liability in areas already determined by the Supreme Court are non-existent in the landlord-tenant relationship involved herein. Neither justice nor reason dictate the advisability of a change in landlord-tenant law which would permit recovery for personal injuries without proof of deviation from the standard of reasonable care.
The judgment for plaintiff is reversed with directions to enter judgment for defendant.