163 N.J. Super. 404 (1978)
394 A.2d 1247
IRENE M. TERREY, PLAINTIFF-APPELLANT,
v.
SHERIDAN GARDENS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1978.
Decided November 2, 1978.
*405 Before Judges HALPERN and ANTELL.
*406 Leonard A. Wolkstein argued the cause for appellant (Gutterman & Wolkstein, attorneys).
Isaac Henkoff argued the cause for respondent (Klein, Chester, Greenburg & Henkoff, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
This appeal presents the issue of whether the trial judge erred in dismissing plaintiff's complaint at the close of her proofs on liability.
The operative facts, as gleaned from the testimony of plaintiff and her daughter and the interrogatories read into evidence, are as follows. On October 31, 1973 plaintiff, a 54-year-old widow, was a tenant in a garden-apartment multiple-dwelling complex consisting of four separate apartments, owned and operated by defendant corporation. Her only means of access to the street from her apartment was by way of outside steps exposed to the weather, which were admittedly under the control of defendant. On the day in question she left her apartment, walked across a platform or stoop landing, tried but was unable to hold a handrail because a thorn-filled rose bush had grown over it, slipped on the top step which was filled with wet flattened leaves, fell to the sidewalk and sustained injuries. Defendant, in its answers to interrogatories, admitted it maintained no established procedure to inspect or maintain the steps and that the steps were not regularly patrolled, supervised or cleaned by defendant or its agents.
When defendant moved for an involuntary dismissal at the end of plaintiff's proofs, she "was entitled to the benefit of all of the favorable inferences which might reasonably be drawn from the testimony which she had presented." Taylor v. N.J. Highway Auth., 22 N.J. 454, 459 (1956); Ferdinand v. Agricultural Ins. Co. of Watertown, N.Y., 22 N.J. 482, 494 (1956). The test has also been stated thusly:
*407 In the case of motions for involuntary dismissal, the test is, as set forth in R. 4:37-2(b) and equally applicable to motions for judgment, whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in * * * favor" of the party opposing the motion, i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. Bozza v. Vornado, Inc., 42 N.J. 355 (1964); Bell v. Eastern Beef Co., 42 N.J. 126 (1964); Franklin Discount Co. v. Ford, 27 N.J. 473, 490 (1958). The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion. [Dolson v. Anastasia, 55 N.J. 2, at 5-6 (1969)]
A landlord is not an insurer for the safety of his tenants, but he is under a legal duty to maintain a common stairway under his control reasonably fit for use by occupants of the premises and by others lawfully thereon. Coleman v. Steinberg, 54 N.J. 58, 63 (1969); Taylor v. N.J. Highway Auth., supra, 22 N.J. at 461. This common law duty has been supplemented and broadened by the Tenement House Act (N.J.S.A. 55:1-1 et seq.) now embodied in the Hotels and Multiple Dwelling Act (N.J.S.A. 55:13A-1 et seq.) The latter statute was enacted in 1967 as remedial legislation to protect the health and welfare of the public, to be sure they have decent, standard and safe dwelling units. We are directed to liberally construe the statute so as to effectuate its purposes. N.J.S.A. 55:13A-2. The premises here in question are within the purview of the statute by virtue of N.J.S.A. 55:13A-3(k) since they contain more than three separate dwelling units.
The Commissioner of the Department of Community Affairs, who is named in the statute as the operative head of the department, is directed by N.J.S.A. 55:13A-7 to "issue and promulgate * * * such regulations as he may deem necessary to assure that any * * * multiple dwelling will be * * * maintained in such manner as is consistent with, and *408 will protect the health, safety and welfare of the occupants * * *." The statute further directs that such regulations shall include standards for the maintenance of such areas as "(b) Methods of egress, including * * * independent stairways, and handrails, railings, brackets, braces and landing platforms thereon, additional stairways, and treads, winders, and risers thereof, entrances and ramps, * * * (v) Entrances and ramps."
As directed by the above statute, the Commissioner promulgated rules, which were in effect when plaintiff allegedly fell and which imposed nondelegable duties upon landlords. The sections of the rules applicable here are set out in N.J.A.C. 5:10-19.4 as follows:

5:10-19.4 DUTIES OF OWNER
(a) General duties are as follows:
1. The owner of any hotel or multiple dwelling shall be responsible at all times for keeping all parts of the premises occupied by himself or other persons, to the extent of his responsibilities described herein, clean and free of infestation and hazards to the health or safety of occupants and other persons in or near the premises. * * *
4. The exterior of the premises and all structures thereon shall be kept free of all nuisances, insanitary conditions, and any hazards to the safety or health of occupants, pedestrians and other persons utilizing the premises, and any of the foregoing conditions shall be promptly removed and abated by the owner or operator. It shall be the duty of the owner or operator to keep the premises free of such conditions which include, but are not limited to the following:
i. Brush, weeds, broken glass, stumps, roots, obnoxious growth, filth, garbage, trash, refuse and debris;
ii. Dead and dying trees and limbs or other natural growths which by reason of rotting or deteriorating conditions or storm damage constitute a hazard to persons in the vicinity thereof. Trees shall be kept pruned and trimmed to prevent such conditions; * * *
iv. Holes, excavations, breaks, projections, obstructions, litter, icy conditions, uncleared snow and excretion of pets and other animals on path, walks, driveways, parking lots and parking areas and other parts of the premises. Holes and excavations shall be filled and repaired, walks and steps replaced and other conditions *409 removed where necessary to eliminate hazards or insanitary conditions with reasonable dispatch upon their discovery; * * *
vi. Walks, courts and other paved areas shall be kept clean and free of litter, dirt, mud or other conditions hazardous to pedestrians. * * *
7. Railings shall be installed at all hazardous locations as herein defined and shall be of the types and meet the standards herein required.
i. Handrails: All stairways having three or more risers shall have handrails which are to be securely fastened to walls or guard rails, and unless continuous, shall be returned to the enclosure walls or posts at the end of the stairs.
(g) Managerial and maintenance personnel requirements are as follows:
1. The owner shall have the positive responsibility of providing, either by his own direct efforts or by hiring others qualified to so serve, a person or persons able by training or experience to discharge the duties and responsibilities outlined for owners under these regulations. * * *
ii. Providing regular daily care for all common areas including removal of garbage, litter or other accumulations;
iii. Attending to sidewalks, pedestrian walkways, parking areas and driveways and, in case of snow or ice, to permit safe passage in and out of the premises for vehicles and pedestrians; * * *
v. Such other and further routine operational and maintenance service as is required of the owner to comply with these regulations.
There is no room for doubt that all the regulations set out above are reasonably necessary to implement and make effective the policy declared by the Legislature in N.J.S.A. 55:13A-1 et seq. Blair Academy v. Sheehan, 149 N.J. Super. 113, 118 (App. Div. 1977).
Giving plaintiff the benefit of all reasonable inferences, as we are required to do on a motion for involuntary dismissal, a jury could reasonably find that the flattened wet leaves had been on the steps for at least a day; that they had fallen from a nearby tree on the premises; that the handrailing had been overgrown with rose bush thorns for an extended period of time and that defendant had totally disregarded the Commissioner's regulations in inspecting and maintaining the common structures here involved. The evidence *410 at the close of plaintiff's proofs was sufficient for the jury to conclude that defendant breached the duty of care owed plaintiff, and that such was the proximate cause of plaintiff's fall and resulting injuries.
The trial judge dismissed the complaint because he concluded plaintiff failed to prove that defendant had actual or constructive knowledge of the existing conditions on the exterior steps and the handrailing. His reliance upon Dwyer v. Skyline Apartments, Inc., 123 N.J. Super. 48 (App. Div. 1973), aff'd o.b. 63 N.J. 577 (1973) for his decision is misplaced. Dwyer dealt with a latent unknown defect not reasonably discoverable to a tenant's hot water faucet. Here we are concerned with a patent condition which a jury could find that if defendant's duty to inspect and maintain had been performed, the defective condition, which was reasonably foreseeable, would readily have been observed. The issue of negligence projected by the complaint and proofs should have been left for jury determination.
Reversed and remanded for a new trial.